106 P.3d 1031

KELLY SERVICES, Petitioner Employer,

RSKCO, Petitioner Carrier,

v.

INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Arthur Gross, Respondent Employee.

No. 1 CA–IC 04–0016.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 8, 2005.

der, Chief Judge of the Arizona Court of Appeals,       Division Two, was designated to sit in her stead.

Cross & Lieberman, P.A. By David W. Earl, Lawrence H. Lieberman, Phoenix, Attorneys for Petitioners Employer and Carrier.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Wilmer, Messer & Testini, P.L.C., By Steven J. Messer and Toby Zimbalist, Phoenix, Attorneys for Respondent Employee.

## OPINION

HALL, Presiding Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona (ICA) decision upon review for a permanent total disability. The Administrative Law Judge (ALJ) based her determination on her conclusion that, as a matter of law, the claimant's geographical labor market could not be expanded outside Yucca, Arizona. Because a proper determination of the relevant geographical labor market in a given case is a factual inquiry dependent on a variety of factors, we set aside the award.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On January 6, 2000, the respondent employee (the claimant) was employed by the petitioner employer, Kelly Services (Kelly), as a test driver at the Ford Motor Company Proving Ground in Yucca, Arizona. On that date, he was involved in a motor vehicle accident and sustained broken ribs and cervical and lumbar injuries. Following surgery for these injuries, the claimant's medical condition eventually became stationary and was closed with an unscheduled permanent partial impairment.

¶ 3 The ICA then entered its findings and award for a 24 percent unscheduled permanent partial impairment and a 26.46 percent loss of earning capacity (LEC), which resulted in monthly disability benefit payments to the claimant of $190.95. The claimant timely requested a hearing, asserting that he had sustained a "greater loss of earning capacity." Four ICA hearings were held in which testimony was received from the claimant, his treating physician, an independent medical examiner, and two labor market experts. The testimony established that the claimant resided in Yucca, a town of approximately two-hundred people,[1] and had attempted but was unable to find any suitable employment in Yucca with an employer that could accommodate his work restrictions. The claimant testified that he had not sought employment in either Kingman or Lake Havasu City because a commute of that distance, approximately 24 and 34 miles, respectively, on a daily basis would be too difficult in light of his physical disabilities and his lack of a sufficiently reliable vehicle.

¶ 4 Following these hearings, ALJ Schatz entered an award for an unscheduled permanent partial disability. He specifically rejected the claimant's credibility, stating "[o]n the issue of applicant's ability to drive a motor vehicle, I find the applicant is not credible and conclude therefrom, that applicant is capable of driving."[2] He also resolved the

---

1. As recorded in the 2000 census, the population of Yucca is 282. *See* Yucca Statistics & Facts, available at *http://www.usacitieson-line.com/azcountyyucca.htm# statistics* (last visited January 26, 2005).

2. Video surveillance evidence was introduced that documented the claimant driving a truck and making a number of stops at various businesses in Lake Havasu City and Kingman in August 2000.

medical conflict in favor of the independent medical examiner, Kevin Ladin, M.D., and adopted the labor market testimony of Kelly's expert, Mark Kelman. Based on Mr. Kelman's labor market report, the ALJ found the claimant was entitled to monthly disability benefits of $190.95.

¶ 5 The claimant filed a request for review of the award, and because of ALJ Schatz's retirement, the case was reassigned to ALJ Turney. She entered a Decision Upon Review reversing the prior award, finding that claimant was entitled to a permanent total disability award in the amount of $826.44 because the relevant geographical labor market was limited to the "Yucca area":

> The applicant's loss of earning capacity cannot be adjusted downward because he continues to reside in Yucca where he lived and worked when he sustained his industrial injury or because he has not voluntarily chosen to expand his job search outside the Yucca area. Even assuming there are jobs suitable for the applicant in either Kingman or Lake Havasu, those jobs are beyond the applicant's relevant labor market and are not, therefore, reasonably available.

¶ 6 Kelly timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21(A)(2) (2003), 23–951(A) (1995), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

¶ 7 Kelly argues that the ALJ erred when she found as a matter of law that the relevant labor market could not be expanded outside Yucca, Arizona. On appeal, we deferentially review reasonably supported factual findings of the ICA, but independently review its legal conclusions. *See, e.g., PFS v. Indus. Comm'n*, 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997).

¶ 8 In establishing an LEC, the object is to determine as nearly as possible whether the claimant can sell his services in the open, competitive labor market and for how much. *Davis v. Indus. Comm'n*, 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). The burden of proving an LEC is on the claimant.

*See, e.g., Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983). Because an injured worker must seek to mitigate his damages, a claimant has an affirmative burden to establish his inability to return to date-of-injury employment and to make a good-faith effort to obtain other suitable employment or to present testimony from a labor market expert to establish his residual earning capacity. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266, 717 P.2d 943, 945 (App.1986). If there is testimony that these efforts were made and were unsuccessful, the burden of going forward with contrary evidence then shifts to the employer and carrier. *See, e.g., Zimmerman*, 137 Ariz. at 580, 672 P.2d at 924.

¶ 9 To establish residual earning capacity, there must be evidence of job opportunities that are (1) suitable, that is, which the claimant would reasonably be expected to perform considering his physical capabilities, age, education, training, and prior work experience; and (2) reasonably available. *Id.* at 582, 672 P.2d at 926 (citing *Germany v. Indus. Comm'n*, 20 Ariz.App. 576, 580, 514 P.2d 747, 751 (1973)); *see also* A.R.S. § 23–1044(D) (Supp.2004) (setting forth nonexclusive list of criteria for determining loss of earning capacity). In determining reasonable availability, a claimant's earning capacity must be assessed with reference to his "area of residence," which includes the area where the employee lived and worked at the time of the industrial injury and any area to which the employee relocated thereafter. *See Arizona Workers' Compensation Handbook* § 7.4.2.4, at 7–24 (Ray J. Davis et al. eds., 1992 and Supp.2004); *Zimmerman*, 137 Ariz. at 581, 672 P.2d at 925. Professor Larson also has written that a reasonable effort to obtain employment "does not require the claimant to look for work beyond *the general area of where he lives*." 4 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 84.01(4) n. 25, at 84–10 (2004) (emphasis added).

¶ 10 The issue in this case is the test that should be applied in delimiting the claimant's "area of residence" or the "general area of where he lives." Kelly argues that

ALJ Schatz correctly concluded that in rural Arizona communities, such as Yucca, it is more reasonable to include neighboring communities within the relevant geographical labor market. In support of this argument, Kelly provides the analogy to the Phoenix metropolitan area, which encompasses a number of separate cities, including Scottsdale, Tempe, Mesa, Glendale, and Chandler, that are considered to be one labor market.

¶ 11 This precise question has never been directly addressed by any reported decision in Arizona. In *Schnatzmeyer v. Industrial Commission*, 77 Ariz. 266, 269, 270 P.2d 794, 796 (1954), the Arizona Supreme Court, in reviewing the Industrial Commission's determination that a claimant had made insufficient effort to secure employment because he did not seek work outside the area of Kingman, stated that a claimant should not be required to "abandon his established home and, at an expense he can ill afford, that he travel from state to state or community to community" in an effort to obtain employment. In support thereof, the court quoted a Vermont case for the proposition that "there is incapacity for work when a man has a physical defect *which makes his labor unsalable in any market reasonably accessible to him ....*" *Id.* (quoting *Roller v. Warren*, 98 Vt. 514, 129 A. 168, 170 (1925) (emphasis added in *Schnatzmeyer* )). Subsequently, in *Phelps Dodge Corp. v. Industrial Commission*, 90 Ariz. 248, 250, 367 P.2d 270, 272 (1961), the court, citing *Schnatzmeyer*, rejected the Commission's argument that the claimant should have been required to "go outside his home area [of Clifton–Morenci] and seek employment [ ] in Phoenix." [3] Similarly, in *Western Union Telegraph Co. v. Industrial Commission*, 13 Ariz.App. 189, 192, 475 P.2d 281, 284 (1970), we held that a claimant need not accept an offer of re-employment that would require a move to another state.

¶ 12 Arizona courts have nonetheless recognized that a claimant may voluntarily expand his labor market by seeking employment outside the area where he lived and worked at the time of his injury. *See Ihle v. Indus. Comm'n*, 14 Ariz.App. 463, 465–66, 484 P.2d 232, 234–35 (1971) (100 mile round-trip from Mammoth to Tucson). Further, when a claimant voluntarily moves from the locality where he was living and working at the time of his injury, his LEC may be based on the job market in either his new residence or the place where the injury occurred. *Zimmerman*, 137 Ariz. at 581, 672 P.2d at 925. Finally, when a claimant works half of the year in two separate locales, his labor market for purposes of establishing an LEC includes both cities. *See Paramo v. Indus. Comm'n*, 186 Ariz. 75, 80, 918 P.2d 1093, 1098 (App.1996) (migrant farm worker who traveled between Salinas, California and Yuma).

¶ 13 The facts of this case do not fit neatly within either of these lines of cases. On the one hand, claimant would not have to change his residence to work in either Kingman or Lake Havasu City. Neither has he "voluntarily" sought employment in either of these cities. In her Decision Upon Review, the ALJ stated: "The thread running through these cases is that an applicant cannot be compelled to expand his job search into an area beyond his local labor market." Although this proposition is well-supported by the cases cited above, we believe the ALJ missed the mark when she concluded that any suitable jobs in Kingman or Lake Havasu City "are beyond the applicant's relevant labor market and are not, therefore, reasonably available." In making this determination as a matter of law, she evidently believed that Arizona case law compelled a conclusion that the "local labor market" for a resident of Yucca did not include either Kingman or Lake Havasu City, even though both parties' labor market experts agreed that 35 miles was an acceptable one-way commute to work.[4]

---

3. The Clifton–Morenci area is located on the eastern Arizona border with New Mexico, approximately 207 miles from Phoenix. *See Clifton/Morenci Community Profile, available at* http://www.azcommerce.com/pdf/commasst/comm/clifton.pdf (last visited January 26, 2005).

4. Citing Arizona Administrative Code R6–3–53150, the claimant contends that his "reasonable commuting distance" is no more than twenty miles. However, this regulation governs unemployment compensation benefits and is not binding on the Industrial Commission, which has not adopted a similar provision.

¶ 14 Neither the case law nor common sense supports a bright-line rule that a job site located 24 to 34 miles from a claimant's "residence" is, for that reason alone, not "reasonably available" as a matter of law. We disapprove of such a categorical approach because it arbitrarily precludes consideration of the labor market in the surrounding area.

¶ 15 Instead, the more appropriate inquiry for determining whether a particular labor market (not requiring a change in residence) is within a claimant's "area of residence" is whether a reasonable person in the claimant's situation would probably seek employment there. In making such a determination, a totality of the circumstances approach, in which all relevant factors are considered, should be used. By way of example only, relevant considerations in determining whether a potential job lies within a person's geographical labor market area would typically include availability of transportation, duration of commute, and the length of workday. *See, e.g., Dilkus v. Workmen's Comp. Appeal Bd.,* 543 Pa. 392, 671 A.2d 1135, 1138–39 (1996). It would also include the ability of the person to make the commute based on his physical condition. *See, e.g., Karpulk v. Workmen's Comp. Appeal Bd.,* 708 A.2d 513, 515–16 (Pa.Commw.Ct.1998) (potential jobs offered to claimant not reasonably available because claimant's work-related back condition required him to stop every twenty minutes, get out of the car and walk around, which would have turned a round-trip of 150 miles resulted into a five-hour commute).

## CONCLUSION

¶ 16 Although we do not hold that the relevant geographical labor market *had* to be expanded outside Yucca in this case, we do determine that it *could have been.* For this reason, we set aside the award.[5]

5. The claimant raises an additional issue in his answering brief regarding his entitlement to transportation costs if the applicable labor market is found to include areas outside the city of Yucca. Based on our resolution of the first issue in this case, it is unnecessary to reach this issue.

CONCURRING: ANN A. SCOTT TIMMER, Judge, and DONN KESSLER, Judge.

*But see Ihle,* 14 Ariz.App. at 465, 484 P.2d at 234 (Industrial Commission "can and should consider the attendant work-connected travel expenses in determining a claimant's post-injury earning capacity").