NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KELLY CALDER, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

INTERSTATE DISTRIBUTOR CO., *Respondent Employer,*

ZURICH AMERICAN INSURANCE CO., *Respondent Carrier*.

No. 1 CA-IC 13-0033
FILED 3-4-2014

Special Action - Industrial Commission
ICA NOS. 20060-900230** and 20061-380717*
CARRIER CLAIM NOS. 2080136381** and 2080137295*

Layna Taylor, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Ely, Bettini, Ulman & Rosenblatt, Phoenix
By Joseph M. Bettini, Ronald Ozer

Toby Zimbalist, Phoenix
By Toby Zimbalist
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By K. Casey Kurth
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Lawrence F. Winthrop joined.

---

**J O N E S,** Judge:

¶1        This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review awarding permanent partial disability benefits to Kelly Calder (Claimant). Two issues are presented on appeal:

> (1) whether the administrative law judge's (ALJ) failure to resolve conflicts in the medical evidence with regard to Claimant's work restrictions precluded a finding of suitable employment; and

> (2) whether the job adopted by the ALJ was reasonably available to Claimant.

Because we are able to ascertain the factual basis for the ALJ's award and we find it to be legally sound, we affirm.

**JURISDICTION AND STANDARD OF REVIEW**

¶2        This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2014), 23-951(A) (2014), and Arizona Rule of Procedure for Special Actions 10.  In reviewing ICA's findings and awards, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14,

63 P.3d 298, 301 (App. 2003). [1]  We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

## PROCEDURAL AND FACTUAL HISTORY

¶3 On October 5, 2005, Claimant worked as a truck driver for the respondent employer, Interstate Distributor Company (Interstate).  A vibration in the truck's steering column caused Claimant to gradually develop severe hand pain; she was diagnosed with carpal tunnel syndrome and filed a workers' compensation claim.  On January 24, 2006, Claimant filed a second workers' compensation claim for a vibration-related injury to her lower back.  Both claims were denied for benefits by the respondent carrier, Zurich American Insurance Company (Zurich).  Claimant timely protested the denial of her claims, and the claims were consolidated for hearing.

¶4 After the initial hearing was held, Zurich accepted both claims for benefits.  Both claims were then eventually closed with permanent impairments:

> **1st INJURY:** <u>10-5-05</u> Applicant sustained bilateral carpal tunnel and an index finger trigger finger. Applicant underwent surgery and benefits were terminated effective 5-7-09 with a 10% permanent impairment of the index finger bilaterally and 4% permanent impairment of each upper extremity. Supportive medical maintenance benefits are being provided.

> **2nd INJURY:** <u>1-24-06</u> Applicant sustained a back injury for which benefits were terminated effective 5-7-09 with a 5% permanent impairment.  Supportive maintenance benefits are being provided under the management of Dr. Norris.

> Applicant lived in Seligman and worked for a company based out of Tacoma [,] WA at the time of her injury. Applicant currently resides in Seligman.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶5          The ICA next entered an award for an unscheduled permanent total disability, finding Claimant had sustained an unscheduled 5% permanent partial impairment, which resulted in a 100% reduction in her monthly earning capacity, and entitled her to receive $1,600.08 per month in permanent disability benefits. The ICA's permanent total disability award was based upon its finding that Claimant's "place of residence" would preclude her from obtaining any suitable, reasonably available employment.

¶6          Zurich timely protested the ICA's award. Claimant, four physicians, and two labor market experts testified at six subsequent hearings. Following these hearings, the ALJ entered a consolidated award in favor of Claimant for unscheduled permanent partial disability benefits in the amount of $557.39 per month. After Claimant requested administrative review, the ALJ supplemented her award by specifically rejecting Claimant's credibility regarding her subjective physical limitations, and affirmed. Claimant next brought this appeal.

## DISCUSSION

¶7          Claimant asserts the ALJ erred by finding there was suitable and reasonably available employment within her geographical labor market. In order to establish a claimant's residual earning capacity, there must be evidence of job opportunities which are (1) suitable, i.e., which a claimant would reasonably be expected to perform considering her physical capabilities, education, and training; and (2) reasonably available. *Germany v. Indus. Comm'n*, 20 Ariz. App. 576, 580, 514 P.2d 747, 751 (1973).

¶8          Ordinarily, the claimant has the burden of proving a loss of earning capacity (LEC). *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983). In that regard, a claimant has an affirmative burden to establish an inability to return to date-of-injury employment, and must make a good faith effort to obtain other suitable employment, or present testimony from a labor market expert to establish residual earning capacity. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266, 717 P.2d 943, 945 (App. 1986). If there is testimony that a good faith effort was made, but was unsuccessful, the burden of going forward with contrary evidence to establish suitable and reasonably available employment shifts to the employer and carrier. *Zimmerman*, 137 Ariz. at 580, 672 P.2d at 924.

¶9          In this case, Claimant both performed an extended work search and presented labor market testimony from Nathan Dean. It was Dean's opinion that Claimant had a permanent total LEC. In rebuttal,

Zurich presented labor market testimony from Lawrence Mayer. Relying upon the recommendations of Paul Guidera, M.D. and Terry E. McLean, M.D. pertaining to Claimant's physical condition, Mr. Mayer testified Claimant was capable of performing full-time sedentary employment. Mr. Mayer also noted, if he considered the recommendations from Mark David Mellinger, M.D. and Kyle Norris, M.D., Claimant could only return to part-time sedentary work.

¶10 Claimant first argues the ALJ could not make a finding of suitable employment because the ALJ failed to explicitly resolve the medical conflict regarding Claimant's work restrictions. Initially, we note that Claimant did not raise this issue in her request for review to the administrative law judge. *See Spielman v. Indus. Comm'n*, 163 Ariz. 493, 496, 788 P.2d 1244, 1247 (App. 1989) (additional findings must be requested on administrative review for judicial review of sufficiency of the findings).

¶11 Generally, this court will not consider an issue on appeal that has not been raised before the ICA. *See Norsworthy v. Indus. Comm'n*, 24 Ariz. App. 73, 74-75, 535 P.2d 1304, 1305-06 (1975). This rule stems from the requirement that administrative remedies must be exhausted before judicial review is sought. *See Larson v. Indus. Comm'n*, 114 Ariz. 155, 158, 559 P.2d 1070, 1073 (App. 1976). In the absence of a specific request for review, we limit our appellate review to (1) matters which are in the record, such as objections to evidence, and (2) the issue which is fundamental upon review, the sufficiency of the evidence to support the award. *See Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94-95, 559 P.2d 212, 214-15 (App. 1977). For that reason, we review the medical evidence to see if it supports the ALJ's finding of suitable employment.

¶12 In her award, the ALJ summarized the medical testimony from Drs. Mellinger, Norris, Guidera, and McLean. Dr. Mellinger, a board certified orthopedic surgeon with a certificate of added qualification in hand, wrist, and elbow surgery, treated Claimant's bilateral hand injuries beginning in 2006. He performed several surgeries, including bilateral carpal tunnel and trigger finger releases. Dr. Mellinger continued to follow Claimant, and he provided her with prescription medications to control her ongoing hand pain, swelling, and inflammation. He last saw Claimant on September 20, 2011, and at that time, she had full range of motion in her hands, no joint effusion or swelling, and normal grip and motor tone.

¶13        Dr. Mellinger testified that with regard to Claimant's hand-related work restrictions, he agreed with the August 2, 2011 functional capacity evaluation report (FCE), which read:

CONCLUSION/RECOMENDATIONS

Based on the results of this assessment, Mrs. Calder [Claimant] does not meet the demands of her job as a truck driver for finished products. She does not meet the lifting, carrying, pushing, pulling, stooping, and bending requirements. She does not meet the sitting, standing, and walking demands. *She also does not meet the manual dexterity demand of the job.*

Based on the results of testing, the following recommendations are made for future job placement:
**.** *Manual dexterity tasks for short periods of time with ability for frequent rest breaks.*
**.** Majority of work done between waist and shoulder height with minimal to rare low level work.
**.** Ability to change position from sitting to standing frequently throughout the day; 30 minutes for standing, 60 minutes for sitting.
**.** Work in the LIGHT-MEDIUM Physical Demands Category of Work with occasional lifting up to 30 pounds and frequent lifting of 15 pounds.

¶14        Dr. Guidera, board certified in hand and plastic surgery, testified regarding his independent medical examinations (IMEs) of Claimant whom he last saw on July 25, 2011, when she complained of swelling, pain, and numbness in her hands and fingers.  Dr. Guidera examined Claimant's hands and found no evidence of residual carpal tunnel syndrome or trigger fingers.  He did detect, however, some tenderness at the base of her left thumb joint, and obtained x-rays, which were normal.  Dr. Guidera also noted a medical history of fibromyalgia and depression, which "have been documented in hand surgery literature as contributing to a patient's heightened illness awareness. . . ."

¶15        Dr. Guidera opined Claimant's hand condition was medically stationary, and did not require hand related work restrictions. With regard to the FCE, Dr. Guidera testified he disagreed with its conclusions because it was "bereft of any objective information" and contained "no objective data."  In conclusion, Dr. Guidera stated that

Claimant's hand condition did not restrict her from working eight hours per day, five days per week.

¶16        Dr. Norris, board certified in physical and pain medicine, testified he continues to treat the residual symptoms from Claimant's 2006 back injury. In addition, Dr. Norris stated Claimant had a preexisting degenerative disc disease with spondylosis and facet arthropathy, which caused axial and radicular low back pain.[2] Dr. Norris treated Claimant with a variety of modalities, including nerve blocks, radiofrequency ablation, physical therapy, and prescription medication. It was Dr. Norris's opinion that Claimant's industrial injury permanently aggravated her preexisting degenerative back condition. Although Dr. Norris obtained a surgical consultation with Dr. Hales, Claimant was not a surgical candidate. In fact, Dr. Hales found Claimant's pain "seems to be well out of proportion to what would be expected based on the MRI scan and examination."

¶17        With regard to Claimant's physical limitations, Dr. Norris testified he is in general agreement with the FCE, although he had not read the report in its entirety. Specifically, Dr. Norris agreed Claimant was capable of performing light to medium work, occasionally lifting 30 pounds, and frequently lifting 15 pounds. However, Dr. Norris stated he was unable to provide an opinion as to whether Claimant could work full time.

¶18        Dr. McLean, board certified in orthopedic surgery and fellowship trained in spinal surgery, testified regarding his IMEs of Claimant's back. When Dr. McLean last saw Claimant on July 12, 2011, she complained of low back pain extending up to her mid-back, and intermittent numbness in her buttocks and thighs. On examination, Dr. McLean found some limitation in range of motion and tenderness bilaterally in her lumbosacral spine and sciatic notches. He diagnosed chronic axial back pain, probably secondary to Claimant's "lumbar disc degeneration/facet disease."

¶19        Dr. McLean opined that Claimant was stationary with a 5% permanent impairment, and that she could perform full time light duty

---

[2] Dr. Norris defined these terms as, "localized to the axial spine, so the pain . . . is in the back itself. It does not radiate down into the extremities. The radicular component would describe a radiating pain into the extremities. . . ."

work with occasional lifting up to 34 pounds, frequent lifting and carrying up to 10 pounds, and occasional bending, stooping, squatting, climbing, pushing, and pulling. In addition, Dr. McLean testified Claimant was able to work eight hours per day, five days per week, including sitting up to 2.25 hours at a time and standing or walking 30 to 45 minutes at a time. Dr. McLean observed his recommendations were very similar to those contained in the FCE, with the exception of the frequent changes in position.

¶20 In an LEC proceeding, the medical expert's role is to explain the claimant's anatomical or functional impairments. *See, e.g.*, *Adkins v. Indus. Comm'n*, 95 Ariz. 239, 243, 389 P.2d 118, 120 (1964). The labor market expert's role is to receive medical input from the treating physicians regarding the claimant's physical capabilities and to match them to the requirements of specific jobs in the open labor market. *See Tucson Steel Div. v. Indus. Comm'n*, 154 Ariz. 550, 556, 744 P.2d 462, 468 (App. 1987).

¶21 "The [ALJ] is the sole judge of witness credibility." *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984). It is the ALJ's duty to resolve all conflicts in the evidence and to draw all warranted inferences. *Johnson-Manley Lumber v. Indus. Comm'n*, 159 Ariz. 10, 13, 764 P.2d 745, 748 (App. 1988). In doing so, an ALJ is not bound to accept or reject an expert's entire opinion, but instead, is free to combine portions of the expert testimony in a reasonable manner. *Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 123, 776 P.2d 797, 801 (1989).

¶22 An ALJ is not required to make findings on all issues raised in a case, as long as the ALJ resolves the ultimate issues. *See Cavco Indus. v. Indus. Comm'n*, 129 Ariz. 429, 435, 631 P.2d 1087, 1093 (1981). An ALJ's award is sufficient when this court can determine the factual basis for the conclusion and whether it was legally sound. *See Post v. Indus. Comm'n*, 160 Ariz. 4, 7, 770 P.2d 308, 311 (1989). Furthermore, findings may be implicit in an award. *Pearce Dev. v. Indus. Comm'n*, 147 Ariz. 582, 583, 712 P.2d 429, 430 (1985).

¶23 In this case, the ALJ did not make an explicit finding as to the medical testimony relied upon for Claimant's work restrictions. Instead, the ALJ made a detailed review of each of the physician's testimony and then resolved the ultimate issue in an LEC proceeding – what constitutes suitable and reasonably available employment for the injured worker. In that regard, the ALJ found:

13. The applicant takes the position, ultimately, that the applicant is permanently and totally disabled from work, and that because the applicant was not hired for any of the positions she applied for which have been posited by the defendants as showing her earning capacity, those positions cannot be considered in determining her earning capacity. As noted by the defendants, none of the doctors who testified in this matter stated an opinion that the applicant is permanently and totally disabled from work or that she could only work part time. The defendants suggest that the most reasonable result would be to adopt the opinions of Drs. Guidera and McLean that the applicant can work full time within the restrictions given by Dr. McLean, and that employment as a ticket agent or sales office clerk at the Grand Canyon Railway in Williams is suitable and reasonably available to the applicant and in a reasonably accessible labor market. The defendants calculate that veraging [*sic*] the rollback wage between the two positions results in a monthly entitlement of $557.39.

14. The undersigned agrees with the applicant that the appropriate labor market to evaluate the applicant's postinjury earning capacity does not include Farmington, New Mexico, Kingman, or Flagstaff. The undersigned finds, considering all the evidence of record and the applicable provisions of A.R.S. § 23-1044 and applicable case law, that the appropriate labor market for the applicant extends to Williams, Arizona, and that full time employment as a ticket agent or sales office clerk at the Grand Canyon Railway in Williams is suitable and reasonable [sic] available to the applicant and therefore accurately reflects her postinjury earning capacity, resulting in a monthly entitlement of $557.39.

Based upon these findings as well as the award, we conclude the ALJ implicitly adopted the work restrictions provided by Drs. Guidera and McLean.

¶24 Claimant next argues Zurich failed to produce evidence of reasonably available job opportunities within her area of residence. With regard to the reasonable availability of employment for purposes of an LEC, the Arizona Supreme Court requires evidence of the number of job openings, the number of applicants for those openings, and how the

claimant's impairment will affect his ability to compete for those positions. *See Roberts v. Indus. Comm'n*, 162 Ariz. 108, 110-11, 781 P.2d 586, 588-89 (1989). "A claimant's earning capacity must be addressed with reference to his 'area of residence,' which includes the area where the employee lived and worked at the time of the industrial injury and any area to which the employee relocated thereafter," i.e., the geographical labor market. *Kelly Servs. v. Indus. Comm'n*, 210 Ariz. 16, 18, ¶ 9, 106 P.3d 1031, 1033 (App. 2005) (citing *Arizona Workers' Compensation Handbook*, § 7.4.2.4, at 7-24 (Ray J. Davis, et al., eds.; 1992 and Supp. 2013)).

¶25         We addressed more fully the geographical labor market in *Kelly Services:*

> [T]he more appropriate inquiry for determining whether a particular labor market (not requiring a change in residence) is within a claimant's "area of residence" is whether a reasonable person in the claimant's situation would probably seek employment there. In making such a determination, a totality of the circumstances approach, in which all relevant factors are considered, should be used. By way of example only, relevant considerations in determining whether a potential job lies within a person's geographical labor market area would typically include availability of transportation, duration of commute, and the length of workday. . . . It would also include the ability of the person to make the commute based on his physical condition.

210 Ariz. at 20, ¶ 15, 106 P.3d at 1035 (citations omitted).

¶26         In this case, Claimant's labor market expert, Nathan Dean, testified the appropriate geographical labor market for Seligman (Claimant's residence) included a surrounding 50-mile radius. Zurich's labor market expert, Lawrence Mayer, testified Williams, Arizona, was 42.58 miles from Seligman and the only town within 50 miles of Seligman. The ALJ adopted this testimony and found Williams within Claimant's geographical labor market. Regarding the commute, Dr. McLean testified Claimant could sit up to 2.25 hours at a time. In addition, Claimant indicated she possessed a valid driver's license and was capable of driving her personal vehicle up to 1.75 to 2 hours at a time before needing a break.

¶27         Only Mr. Mayer, however, provided an opinion regarding the reasonable availability of employment within Claimant's geographical

labor market. [3] He reported:

| COMPANY NAME/TEL# | CURRENT OPENINGS | # OF QUAL. APPLICANTS | CURRENT WAGE | ROLLBACK WAGE | JOB AVAILABILITY |
|---|---|---|---|---|---|
| Grand Canyon Railway/ 928-773-1976 | Ticket Agent | 7 | $8.50-9.00/hr. | $7.50/hr | 3+ FT Openings In Last 12 months (Williams, AZ) (Operations/ Depot) |
| | | | • • • • | | |
| Pizza Hut/ 928-635-4343 | Assistant General Manager | 7 | $10.50+ | $9.50 | 3 FT Openings in Last 12 Months (Williams AZ) |

**¶28**      This court has previously recognized the carrier need not present evidence there is an "open and waiting job for this particular workman," because this would force the carrier to become an "employment agent." *Germany*, 20 Ariz. App. at 580, 514 P.2d at 751. Instead, we recognized that the open labor market or the competitive labor market is a legal fiction, which courts use to attempt to ascertain the extent to which a workman's injuries in combination with attributes such as education, skills, training, etc., affect his ability to earn a living. *Id.* (citing *Cramer v. Indus. Comm'n*, 19 Ariz. App. 379, 381, 507 P.2d 991, 993 (App. 1973). We find Mr. Mayer's report and testimony legally sufficient to establish reasonably available employment within Claimant's geographical labor market.

## CONCLUSION

**¶29**      For all of the foregoing reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
F I L E D : mjt

---

[3] For the purposes of this report, a labor market survey is a representative sampling of work available to the applicant, and not an exhaustive search of every possible job with every possible employer in the Kingman/Seligman/Williams/Flagstaff, AZ geographic area.