NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

DONNA L. CULLINS, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

SEQUEL YOUTH AND FAMILY, *Respondent Employer*,

PMA c/o GALLAGHER BASSETT SERVICES, *Respondent Carrier.*

No. 1 CA-IC 15-0032
FILED 6-9-2016

Special Action – Industrial Commission
ICA Claim No. 20130-500189
Carrier Claim No. 011975-079287-WC-01

J. Matthew Powell, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Joel F. Friedman, PLLC, Phoenix
By Joel F. Friedman
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Lundmark, Barberich, LaMont & Slavin, PC, Phoenix
By R. Todd Lundmark
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**N O R R I S**, Judge:

**¶1**         In this special action from an Industrial Commission of Arizona ("ICA") award and decision upon review, Petitioner Donna L. Cullins argues the administrative law judge ("ALJ") should not have adopted the testimony of a labor market expert retained by the Respondent Employer, Sequel Youth and Family, and the Respondent Carrier, PMA c/o Gallagher Bassett Services (collectively, "Respondents"), in finding she had sustained a loss of earning capacity that entitled her to $148.09 in temporary partial disability benefits.  Cullins also argues the ALJ committed "reversible error" when he found she was "not a credible or reliable witness."  Reviewing the ALJ's award under the governing standards of review, we disagree with both arguments and affirm.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003) (in reviewing findings and awards of the ICA, appellate court defers to ALJ's factual findings, but reviews questions of law de novo); *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002) (appellate court considers evidence in a light most favorable to upholding ALJ's award).

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**         On February 12, 2013, while working as a behavioral health paraprofessional for the Respondent Employer, Cullins injured her right ankle.  She filed a workers' compensation claim, which the Respondent Carrier accepted for benefits.  After the Respondent Employer became unable to accommodate Cullins's work restrictions, the Respondent Carrier began to pay Cullins temporary disability benefits, effective April 15, 2013, based on her pre-injury average monthly wage of $1,782.  *See generally* Ariz.

Rev. Stat. ("A.R.S.") § 23-1044(A) (2015). In May 2014, the Respondent Carrier reduced Cullins's temporary disability benefits to $148.09 per month based on a March 18, 2014 labor market report prepared by Lisa A. Clapp, a vocational consultant retained by the Respondent Carrier. Based on her research, Clapp concluded that suitable and available employment existed for Cullins post-injury and she could reasonably be expected to earn $1,559.88 per month.

¶3        Cullins timely protested the reduction. After conducting evidentiary hearings for the testimony of Cullins and Clapp, the ALJ found Cullins was not a "credible or reliable witness," but that Clapp's testimony was "credible and . . . consistent with the applicable facts and the medical restrictions imposed by" Cullins's treating physician, Stephen Knecht, M.D. Accordingly, the ALJ concluded the Respondent Carrier had "correctly reduced" Cullins's temporary partial disability benefits. Cullins timely requested administrative review, but the ALJ summarily affirmed the award.

## DISCUSSION

¶4        Cullins first argues the ALJ should not have adopted Clapp's labor market testimony that "suitable employment" was available because Clapp did not ask any of the potential employers she surveyed whether they would allow Cullins to elevate her right leg as necessary to accommodate Cullins's work restrictions ("the elevation restriction"). Although the record reflects Clapp did not ask any of the employers she surveyed whether they would accommodate the elevation restriction, Clapp's testimony nevertheless established the availability of suitable employment in the relevant labor market.

¶5        In establishing loss of earning capacity, the object is to determine, as nearly as possible, whether the claimant can sell his or her services in the open labor market and for how much.[1] *Davis v. Indus.*

[1]The claimant bears the burden of proving loss of earning capacity. *See, e.g., Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983). Accordingly, the claimant must establish he or she is unable to return to date-of-injury employment and show he or she made a good-faith effort to obtain other suitable employment or present testimony from a labor market expert that establishes his or her residual earning capacity. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266, 717 P.2d 943, 945 (App. 1986). If the claimant presents evidence he or she made a good-faith effort

*Comm'n*, 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957).  Further, in making this analysis, the job opportunities must be "suitable, that is, which the claimant would reasonably be expected to perform considering his physical capabilities, age, education, training, and prior work experience." *Kelly Services v. Indus. Comm'n*, 210 Ariz. 16, 18, ¶ 9, 106 P.3d 1031, 1033 (App. 2005).  In a loss of earning capacity proceeding, the medical expert's role is to delimit the claimant's anatomical or functional impairments. *See, e.g., Adkins v. Indus. Comm'n*, 95 Ariz. 239, 243, 389 P.2d 118, 120 (1964).  Consistent with that role, in June 2014, Dr. Knecht released Cullins to "Regular Job with Temporary Limitations: No company driving, sedentary desk work. Must be able to elevate right lower extremity as needed for pain or swelling. No lifting or carrying. No walking or standing more than 10 minutes per hour over an 8 hour day."

¶6 The labor market expert's role is to receive medical input from the treating physician regarding the claimant's physical capabilities and to match them to the requirements of specific jobs in the open labor market. *See Tucson Steel Div. v. Indus. Comm'n*, 154 Ariz. 550, 556, 744 P.2d 462, 468 (App. 1987).

¶7 Consistent with that role, Clapp testified she had been retained to evaluate Cullins's earning capacity. She explained that based on information from Cullins's treating physician, she understood Cullins was restricted to "desk work only," which she interpreted as being "consistent with sedentary work that does not involve a lot of standing and walking, primarily, seated employment."  Clapp testified that suitable work (receptionist, front desk clerk, and customer service representative positions) consistent with the "desk work only" restriction and Cullins's educational and vocational background was available in the relevant labor market (Prescott, Prescott Valley, and Dewey) for a person living where

---

but could not find work, the burden of going forward with contrary evidence to establish suitable and reasonably available employment shifts to the employer and carrier. *Zimmerman*, 137 Ariz. at 580, 672 P.2d at 924.

Here, Cullins presented ample evidence she could not return to her date-of-injury work.  She also testified that because the pain in her ankle severely limited her ability to drive, she had limited her job search to work she could perform at home using her computer.  Although the ALJ did not explicitly find Cullins had failed to meet her burden of showing she had made a good-faith effort to obtain other suitable employment, the ALJ implicitly made such a finding given his finding she was "not credible or reliable." *See infra* ¶¶ 13-14.

Cullins lived (Cordes Lakes). Clapp also testified that the employers she had surveyed had indicated that they would give Cullins "equal consideration."

**¶8**        As Cullins correctly points out, when Clapp surveyed the employers identified in her report, she had not been aware of the elevation restriction and had not asked them whether they would accommodate that restriction.[2]  Accordingly, Clapp agreed the elevation restriction "would likely" eliminate the front desk and customer service representative positions as suitable jobs for Cullins.  But, Clapp reaffirmed the suitability of the receptionist positions, testifying, "I do think that all three of the receptionist positions could accommodate a need to elevate."[3]

**¶9**        Based on the totality of Clapp's testimony and her labor market report, which the ALJ also received into evidence, the ALJ reasonably found that even discounting the "hotel job" and the "more distant jobs"—a reference to the customer service positions described by Clapp in her report—"there were still enough reasonably available and compatible jobs in the Prescott/Prescott Valley market to support" Clapp's conclusions and benefit calculations.

**¶10**        Cullins also argues the ALJ should not have adopted Clapp's labor market testimony because Clapp failed to establish that suitable employment was reasonably available to Cullins given the cost and distance of commuting to several of the potential jobs Clapp had identified in her labor market report.  We reject this argument.

**¶11**        In determining earning capacity, not only must the job opportunities be suitable for the claimant, as discussed above, but the job opportunities must be reasonably available. *Kelly Services*, 210 Ariz. at 18, ¶ 9, 106 P.3d at 1033.  "In determining reasonable availability, a claimant's

---

[2]As noted, in June 2014 Dr. Knecht released Cullins to work, subject to certain restrictions including the elevation restriction.  *See supra* ¶ 4. Clapp evaluated Cullins's earning capacity in March 2014.  Before March 2014, Dr. Knecht's reports had simply described Cullins's work status as "desk work only."

[3]Clapp also testified that when she surveyed the employers, she had not known that Dr. Knecht had also restricted Cullins to "[n]o walking or standing more than 10 minutes per hour over an 8 hour day." But, Clapp explained that this restriction was "very consistent with desk work."

earning capacity must be assessed with reference to his 'area of residence,' which includes the area where the employee lived and worked at the time of the industrial injury and any area to which the employee relocated thereafter." *Id.* (*quoting* Arizona Workers' Compensation Handbook § 7.4.2.4, at 7-24 (Ray J. Davis et al. eds., 1992 and Supp. 2004)). Further, whether a particular labor market is within a claimant's area of residence is measured by whether a "reasonable person in the claimant's situation would probably seek employment there." *Id.* at 20, ¶ 15, 106 P.3d at 1035.

¶12 As noted, Clapp testified that the relevant labor market included Prescott, Prescott Valley, and Dewey. Cullins testified she had worked for her date-of-injury employer in both Prescott Valley and Dewey. Accordingly, under the foregoing authorities, based on the receptionist positions—which were located in Prescott or Prescott Valley—Clapp assessed Cullins's earning capacity within Cullins's area of residence. Thus, neither Clapp nor the ALJ was required to assess the cost and distance of commuting to the other positions. *See Ihle v. Indus. Comm'n*, 14 Ariz. App. 463, 465, 484 P.2d 232, 234 (1971).

¶13 Finally, Cullins argues the ALJ "committed reversible error" by finding her "not credible or reliable" when all of the other evidence substantiated her testimony. We reject this argument for two reasons. First, the ALJ "is the sole judge of witness credibility." *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984). Second, an ALJ may reject a claimant's testimony if the ALJ finds it is inconsistent with other evidence—which was the case here.

¶14 Cullins testified the pain in her right ankle made it difficult if not impossible for her to drive to Prescott or Prescott Valley and that is why she had limited her job search to work she could perform on-line from her home. Yet, Dr. Knecht had not restricted Cullins from driving to work; instead he had restricted Cullins from "company driving," which was significantly different from driving to and from work, as Cullins explained when she described the "company driving" she had done for the Respondent Employer before her injury: "Driving the guys to doctors' appointments, doing shopping, taking them out to, like, the mall. Different excursions. Taking them to buy cigarettes. Stuff like that." And, Cullins acknowledged that even post-injury, she regularly drove to Prescott Valley to shop for groceries and for doctors' appointments for herself and her family. Given the totality of the evidence before the ALJ, we cannot say the ALJ "committed error" in finding Cullins not credible or reliable.

¶15        For the foregoing reasons, we affirm the ALJ's award.



Ruth A. Willingham · Clerk of the Court
FILED: AA