NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HUMBERTO GONZALEZ, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

INTERSTATE DISTRIBUTOR, *Respondent Employer,*

XL SPECIALTY INSURANCE COMPANY, *Respondent Carrier.*

No. 1 CA-IC 18-0011
FILED 12-4-2018

Special Action – Industrial Commission
ICA Claim No. 20160-400132
Carrier Claim No. 006441-001427-WC-01
The Honorable J. Matthew Powell, Administrative Law Judge

**AFFIRMED**

COUNSEL

Humberto Gonzalez, Mesa
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent ICA*

Broening Oberg Woods & Wilson, P.C., Phoenix
By Jerry T. Collen, Alicyn Freeman
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

---

**P E R K I N S**, Judge:

¶1 Humberto Gonzalez appeals the Decision Upon Review of the Industrial Commission of Arizona ("ICA") setting his average monthly wage and permanent disability benefits. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 Gonzalez originally injured his right ankle in September 2014 while working for Southerland Transport. He underwent surgery to repair that damage and the surgeon discharged Gonzalez with no permanent impairment on September 8, 2015. On September 17, 2015, Gonzalez began driving a tractor trailer for a new company, Interstate Distributor. On October 8, 2015, Gonzalez rolled his right ankle while making a delivery, causing him a great deal of pain for about 10 minutes. Gonzalez reported the injury to Interstate the next day, but decided to keep working on it and see if the situation improved. It did not, and on December 9, 2015, the ankle had deteriorated to the point that Gonzalez could no longer put weight on it. Gonzalez informed Interstate of the situation the next day and sought medical treatment on December 16, after which the doctor advised Gonzalez to avoid driving at work until further notice.

¶3 Gonzalez filed a claim regarding the October 8 injury with the ICA on February 3, 2016. Gonzalez later filed a separate claim with the ICA regarding only the December 9 injury. That claim is not at issue here. Interstate's insurance carrier, XL Specialty Insurance Company, issued a Notice of Claim Status denying the relevant claim on March 25, 2016. Gonzalez then requested a hearing; after the hearing the Administrative

Law Judge ("ALJ") ruled that Gonzalez's injury was compensable and found Interstate liable for the injury under the successive injury doctrine. *See Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 605, ¶ 11 (App. 2000). Accordingly, the ALJ awarded Gonzalez medical benefits and noted his eligibility for "temporary total and temporary partial disability benefits as provided by law from October 8, 2015, until [Gonzalez's] injury [is] deemed medically stationary."

¶4 On April 10, 2017, Gonzalez requested another hearing. He contended that XL Specialty violated the ALJ's award by refusing to authorize two medical procedures and failing to pay total temporary disability benefits. XL Specialty responded that it did not authorize two surgeries to fix an underlying congenital issue because they were unrelated to the industrial injury. Regarding the temporary disability payments, XL Specialty argued that the law did not provide for temporary payments to Gonzalez because he holds a law degree and had previously worked as an insurance claims representative. Therefore, XL argued, Gonzalez was capable of obtaining work either in the legal field or as an insurance adjuster, but had failed to do so.

¶5 On June 6, 2017, XL Specialty issued a Notice of Claim Status accepting Gonzalez's claim for the period of March 31, 2017, to June 6, 2017. XL Specialty estimated Gonzalez's average monthly wage at $4,337.82. It then filed another Notice of Claim Status on June 26 that estimated Gonzalez's monthly wage at $2,605.44.

¶6 On June 30, 2017, Erin Welsh, a vocational consultant, submitted to Interstate a "Mini-Loss of Earning Capacity Recommendation." In it, Welsh reported her review of various documents from the record; Gonzalez's restrictions resulting from the industrial injury; Gonzalez's employability; and a sampling of job openings from the Phoenix metropolitan area for which Gonzalez was qualified. Based on her job market survey, Welsh concluded that at least four law firms had entry-level paralegal positions for which Gonzalez was qualified due to his law degree. He could have made a monthly wage of $2,554.73 in that type of job, $50.71 per month less than his average monthly wage with Interstate. Welsh also noted that, as of June 2016, Gonzalez had obtained an Arizona license as a multi-line insurance broker and insurance claim adjuster/representative. She also documented the results of her job market survey, which showed at least four openings in the insurance field for which Gonzalez was qualified as of July 1, 2016. Based on this, Ms. Welsh concluded that as of that date Gonzalez could have made a monthly wage of $3,156.15, an amount more than his average monthly wage with Interstate. Ms. Welsh recommended

setting temporary partial disability benefits in the amount of $33.80 per month from December 15, 2015, through July 1, 2016, and no partial disability payments thereafter. XL Specialty submitted The Welsh vocational report to the ALJ on July 5, 2017.

¶7            On July 21, 2017, the ALJ held a hearing on other issues in Gonzalez's case, during which Gonzalez requested a hearing on his monthly wage calculation from the June 26 Notice of Claim Status. The ALJ held that hearing on October 13, during which he heard from Gonzalez and Carolyn Englander, who oversaw Interstate's payroll operations. The hearing regarded only the amount of temporary compensation Interstate owed to Gonzalez for the period between December 15, 2015 and September 27, 2016. This was the time between when Gonzalez's doctor wrote that it was medically necessary for him to avoid driving at work and when Gonzalez had surgery for an unrelated injury.

¶8            Responding to a request Gonzalez made to subpoena his treating physician and Interstate's request to subpoena Welsh, the ALJ stated, "Once we're done today, we can decide if we still need both of those, and we'll set up a further hearing and try to get those two in for testimony." *See* Ariz. Admin. Code ("A.A.C.") R20-5-141(A). At the end of the hearing, the ALJ explained he did not need any further medical testimony because Interstate had shown that Gonzalez had other work available that he could perform with his industrial injury. Gonzalez did not orally renew his subpoena request at that time.

¶9            On December 4, 2017, the ALJ released his Decision Upon Hearing and Findings and Award Regarding Average Monthly Wage and Permanent Disability Benefits. Based on the evidence presented, the ALJ found that Gonzalez was qualified to work as a paralegal from the time of his industrial injury, and that, at least as of July 1, 2016, Gonzalez was qualified to work as an insurance adjuster. The ALJ then ordered:

> 1.      That applicant's wage at the time of the injury was $2,605.44 per month. Any compensation and permanent disability benefits to which applicant may be entitled should be calculated using that figure.
>
> 2.      That applicant is entitled to temporary partial disability benefits in the amount of $33.80 per month for the time he missed from his truck driving job December 16, 2015 through July 1, 2016. He is not entitled to temporary

compensation benefits for the time missed from work from July 2, 2016 through to September 26, 2017.

¶10        Gonzalez timely requested review, and the ALJ summarily affirmed. Gonzalez then petitioned this Court for a writ of certiorari. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 23-943(H), -951(A) (2018); Ariz. R. P. for Spec. Actions 10; *Watts v. Indus. Comm'n*, 180 Ariz. 512, 513 (1994).

## DISCUSSION

¶11        In reviewing an ICA award, we defer to the ALJ's factual findings but review questions of law *de novo*. *Patches v. Indus. Comm'n*, 220 Ariz. 179, 180, ¶ 2 (App. 2009). We view the evidence in the light most favorable to upholding the ALJ's award. *Aguayo v. Indus. Comm'n*, 235 Ariz. 413, 414, ¶ 2 (App. 2014). On appeal, the petitioner bears the burden of demonstrating error and we will affirm the ALJ's award if "any reasonable interpretation of the evidence" supports it. *Hartford v. Indus. Comm'n*, 178 Ariz. 106, 110 (App. 1994).

## I.       Average Monthly Wage

¶12        Every employee subject to Arizona's workers' compensation system who is injured or killed within the course of employment "shall receive compensation fixed in [A.R.S. Title 23, Chapter 6] on the basis of the employee's average monthly wage at the time of injury." A.R.S. § 23-1041(A). When the employee has not worked for the liable employer for 30 continuous days prior to the compensable injury, "the average monthly wage shall be such amount as, having regard to the previous wage of the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality" that reasonably represents the employee's monthly earning capacity. A.R.S. § 23-1041(B). The ICA has discretion to choose which formula to use and may use "similar employees' actual wages." *Pena v. Indus. Comm'n*, 140 Ariz. 510, 513 (App. 1984).

¶13        At the hearing, the ALJ heard testimony from Englander, who oversaw Interstate's payroll operations. Englander testified that she analyzed the records of four randomly-chosen Interstate employees "who had the same type of job duties, the same pay [rate], the same process of work, the same CDL license, the same pay scale and they were all from Arizona." She calculated each of their payroll records for the year preceding October 2015 and calculated each's average monthly wage over that time. These four employees had average monthly wages of: $2,281.58; $2,935.00; 3115.35; and $2,734.00. She also testified that Interstate had paid Gonzalez

$1,554.79 between his start date on September 17 and his injury on October 8, a period of 21 days. Considering this evidence, the ALJ concluded that the $2,605.44 average monthly wage from the June 26 Notice of Claim Status was reasonable, fair, and representative of Gonzalez's monthly wage at the time of his injury. *See* A.R.S. § 23-1041(B). The ALJ did not err in accepting this evidence or in finding it more probably correct than the evidence Gonzalez offered.

¶14 Gonzalez contends that the ALJ erred in accepting the calculations because they did not include his "per diem" of 10 cents per mile. We disagree.

¶15 For purposes of our workers' compensation scheme, the term "wages" does not include "amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment." *Moorehead v. Indus. Comm'n.*, 17 Ariz. App. 96, 99 (1972). Thus, for the ALJ to consider a per diem as compensation for work performed, the employee must show that "the payments are more than sufficient to reimburse the employee for the work-related expense." *Id.*

¶16 On appeal, Gonzalez asserts that he did not need to make such expenditures because he had a sleeper cab. Before the ALJ, Gonzalez offered evidence of the amount of his per diem, but did not introduce evidence of his employment-related expenditures. The evidence in the record is thus insufficient to conclude that the per diem exceeded Gonzalez's employment-related expenditures. *Carr v. Indus. Comm'n*, 197 Ariz. 164, 167–68 ¶¶ 13–16 (App. 1999) ("Because claimant has failed to present any evidence that the expense payment is not reasonably related to his daily expenses, *Moorehead* applies, and these payments were properly excluded from the average monthly wage.").

## II.        Medical Testimony

¶17 Gonzalez next argues that the ALJ violated his due process rights because the ALJ failed to subpoena two doctors. Gonzalez contends the diagnosis of his treating physician contradicts the diagnoses of the independent physicians as to medical causation and therefore the ALJ required more expert medical testimony to reach an informed conclusion on Gonzalez's work restrictions. The ALJ found additional medical evidence unnecessary because, on the record before the ALJ, Gonzalez was qualified for other work.

¶18 In conducting a workers' compensation hearing, the ALJ "is not bound by common law or statutory rules of evidence" and "may

conduct the hearing in any manner that will achieve substantial justice." A.R.S. § 23-941(F). "As a general rule, an administrative law judge may deny a timely subpoena request if the expected testimony would not be material or otherwise necessary." *Coulter v. Indus. Comm'n*, 198 Ariz. 384, 387, ¶ 14 (App. 2000) (quoting *Hughes v. Indus. Comm'n*, 188 Ariz. 150, 152 (App. 1996)). Here, it was within the ALJ's discretion not to allow further medical evidence because Gonzalez's work restrictions were immaterial to the ultimate question: the amount of Interstate's liability for temporary disability benefits.

**¶19** To determine temporary partial disability payments, the ALJ must calculate "the difference between the wages earned before the injury and the wages that the injured person is able to earn thereafter." A.R.S. § 23-1044(A). In this calculation, the ALJ shall consider, *inter alia*, "the type of work the injured employee is able to perform after the injury." A.R.S. § 23-1044(D). The burden of proving a loss of earning capacity falls on the claimant, who must establish his inability to return to his date-of-injury employment and must demonstrate a good faith effort to obtain other suitable employment. *Kelly Services v. Indus. Comm'n*, 210 Ariz. 16, 18, ¶ 8 (App. 2005). Once the claimant has done so, the burden shifts to the employer to establish the claimant's residual earning capacity, even if the claimant's efforts to obtain employment were unsuccessful. *Id.*

**¶20** To establish residual earning capacity, the employer and carrier must show that suitable job opportunities exist and those jobs are reasonably available. *Id.* at ¶ 9 (citing *Zimmerman v. Indus. Comm'n of Ariz.*, 137 Ariz. 578, 582 (1983)). A suitable job opportunity is one "which the claimant would reasonably be expected to perform considering his physical capabilities, age, education, training, and prior work experience." *Id.* In assessing reasonable availability, the ALJ must consider the claimant's "area of residence," which includes the area in which the claimant lives and worked. *Id.*

**¶21** Gonzalez established that his industrial injury prevented him from returning to commercial truck driving, and that he had made a good faith attempt at obtaining suitable employment in the insurance industry. The burden then shifted to Interstate to show that suitable job opportunities were reasonably available to Gonzalez, which it did.

**¶22** Welsh's report adequately established that Gonzalez was qualified to work as a paralegal as of December 16, 2015. The record shows that Gonzalez is educated and trained in the legal field, and his age and physical capabilities do not prevent him from working as a paralegal. The

report also identified several local law firms during this time frame with multiple openings for paralegals. The only reason Gonzalez gives for not obtaining work as a paralegal is that he has "a severe schizoid personality disorder" that prevents him from working with others. Gonzalez raised this issue for the first time in his request for review and thus it was outside the scope of the ALJ's review. *See* A.R.S. § 23-943(E) (presiding ALJ will review award "upon the record and the memoranda submitted"); *Epstein v. Indus. Comm'n of Ariz.*, 154 Ariz. 189, 195 (App. 1987). Welsh's report also adequately established that Gonzalez was qualified to work as an insurance claims adjuster or representative at least as of July 1, 2016. As above, the record shows that he is trained, experienced, and licensed in the field, and that neither his age nor any timely disclosed physical impairment prevent Gonzalez from working in such a position. Given this evidence, we cannot say that the ALJ abused his discretion, or violated Gonzalez's due process rights, by refusing to issue subpoenas for evidence he considered duplicative. *See Mathews v. Eldridge*, 424 U.S. 319, 339–48 (1976) (due process in administrative proceeding requires balancing interests of claimant, government, and public).

**III.        Vocational Report**

**¶23**        Gonzalez finally argues that the ALJ erred because he did not allow Gonzalez to examine Welsh regarding her vocational report. Part of the ALJ's "statutory mandate of 'substantial justice'" includes the responsibility to carefully guard a party's right to cross-examine the author of a report entered into evidence. *Coulter v. Indus. Comm'n*, 198 Ariz. 384, 387, ¶ 13 (App. 2000). A party may waive this right by failing to "designate the witnesses upon whom he wishes to exercise the right of cross-examination." *Davis v. Indus. Comm'n*, 103 Ariz. 114, 118 (1968).

**¶24**        "If at the conclusion of a hearing a party seeks to continue the hearing to introduce additional evidence, the party shall state specifically and in detail" the nature and substance of the evidence and the name and address of any additional witnesses. A.A.C. R20-5-156(B). Welsh did not testify in this case and would thus be an additional witness. Despite this, Gonzalez did not move to continue at the conclusion of the hearing when the ALJ considered what other evidence and witnesses were necessary. At that time, Gonzalez described the content of Welsh's report—and presumably any cross-examination of her—as moot. Accordingly, Gonzalez waived his right to introduce evidence regarding Welsh and may not reassert it now. *See Naglieri v. Indus Comm'n*, 236 Ariz. 94, 97, ¶¶ 12–13 (App. 2014); *Mother Tucker's Food Experience v. Indus. Comm'n*, 142 Ariz. 496, 500–01 (App. 1984).

## CONCLUSION

¶25      For the foregoing reasons, we affirm the ICA's Decision Upon Review.



AMY M. WOOD • Clerk of the Court
FILED: AA