672 P.2d 922

John C. ZIMMERMAN, Petitioner,

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Mental Retardation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

No. 16382–PR.

Supreme Court of Arizona, En Banc.

Oct. 12, 1983.

Davis & Eppstein by Philip Hall, Tucson, for petitioner.

James A. Overholt, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Fred R. Sands, Phoenix, for respondent carrier.

FELDMAN, Justice.

John Zimmerman (claimant) was injured in an industrial accident which occurred in January, 1978. As a result of the injuries, he claims a total loss of earning capacity. The Industrial Commission awarded benefits based upon only a partial loss. The court of appeals affirmed that award by memorandum opinion and claimant now petitions this court for review. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Ariz.R.Civ.App.P. 23, 17A A.R.S. We granted review in order to examine and settle the law pertaining to the nature and extent of evidence necessary to support a finding that an impaired employee has other work which is "reasonably available" and which should, therefore, be considered in determining the existence or percentage of lost earning capacity.

Claimant was a victim of juvenile rheumatoid arthritis, a progressive disease which had caused pain, fatigue and joint deformities since childhood. Notwithstanding this affliction, claimant obtained a masters degree in counseling and guidance and then worked for several years as a unit administrator in the mental retardation section of the Arizona Training Program, a governmental agency. Claimant's services prior to the industrial injury were very satisfactory, and his average earnings at the time of the injury were $1,250 per month. According to the administrative law judge:

> Although the applicant was handicapped by his preexisting juvenile rheumatoid arthritis, he was able to accomplish his job which entailed approximately one mile of walking each day .... The job was nominally an eight-hour day; however, it apparently required from eight to fifteen hours each day since he was constantly on call to resolve problems.

In January, 1978, claimant injured his hip at work. This injury caused a severe, generalized exacerbation of his arthritis. Claimant suffered from a high fever and painful joint inflammation. Eventually, a left hip arthroplasty became necessary and was performed. The exacerbation of the rheumatoid inflammatory process subsided but left claimant with a permanently aggravated condition. Claimant was unable to return to his former employment because he was physically unable to perform the work.

Claimant received his medical release. The Industrial Commission determined that there was no loss of earning capacity and claimant protested. At the hearing which followed, claimant argued that he suffered from a total loss of earning capacity because no jobs were available for those with his impairment. Although the administrative law judge rejected much of the testimony of the insurance carrier's employment expert, he did make the following findings:

7. ... Of the many jobs presented by the labor market consultant on behalf of the State Compensation Fund, which she thought the applicant would be capable of performing, only one was available on a thirty-hour week. This job is entitled Counseling and Advocacy Coordinator for the Catholic Community Services. This position would have paid a wage of $672.84 per month on the date of the applicant's industrial injury....

....

10. The applicant does have the mental and physical capacity to perform the position of a counseling and advocacy coordinator for the Catholic Community Services in Tucson, which would have paid him the salary of $672.84 per month from the date of his industrial injury and such jobs are available to him in the city of Tucson.

11. The applicant has, therefore, sustained a 53.83% reduction in his monthly earning capacity, entitling him to the monthly sum of $370.06 ....

Claimant was denied relief on administrative review. He then sought relief by special action in the court of appeals. The court of appeals held as follows:

The claimant argues that the evidence failed to establish that the position of counseling and advocacy coordinator was reasonably available .... We disagree .... [O]f the 63 applicants for this position, 10 were interviewed. The employment consultant testified that the employer would have interviewed the claimant for this position. This competition [for the job] did not compel a finding that the job was unavailable.

Conceding that the findings of the administrative law judge must be affirmed if there is reasonable evidence to support them, claimant argued that the findings are totally unsupported by the evidence and contrary to long settled legal principals. Thus, claimant argued, the court of appeals erred in affirming the award. We agree with claimant's position.

## BURDEN OF PROOF AS TO AVAILABILITY OF OTHER EMPLOYMENT

■ Ordinarily, the burden of proof on loss of earning capacity is upon the injured worker. That burden may be carried by evidence of the injured worker's inability to perform the job at which he was injured and to get other work which he can perform in light of his physical impairments. *Dean v. Industrial Commission,* 113 Ariz. 285, 551 P.2d 554 (1976); 2 A. Larson, *Workmen's Compensation Law,* §§ 57.60, 57.61 (1981). Thus, as the court of appeals indicates, "It is normally incumbent upon an injured workman to demonstrate a reasonable effort to secure employment in the area of his residence." If there is testimony that such an effort was made and was unsuccessful, the burden of going forward with contrary evidence to establish the availability of suitable employment shifts to the employer and the carrier. *Dean v. Industrial Commission, supra, Employer's Mutual Liability Insurance Company of Wisconsin vs. Industrial Commission,* 25 Ariz.App. 117, 541 P.2d 580 (1975); Larson, *supra.* Here, claimant did not seek work in Tucson after he received his medical release. Instead, he moved to

St. George, Utah. Claimant testified that he did this because he thought it would be easier for him to live in a small town. He did inquire about self-employment and other work in St. George, but testified that he was unable to find any job openings which were suitable in light of his physical impairments. The carrier (the "Fund") claims that where the claimant voluntarily moves from the labor market where the injury was sustained, findings regarding his loss of earning capacity may be based on the job market in either his new residence or in the locality where the injury was sustained. We agree. *See, Edwards v. Industrial Commission,* 14 Ariz.App. 427, 430, 484 P.2d 196, 199 (1971).

While the parties argue about the burden of proof and the burden of going forward with the evidence, we do not see these issues as the real problem in this case. At the hearing on loss of earning capacity, both parties produced expert testimony with regard to the availability of suitable employment in Tucson. Claimant's expert testified that none was available for one with claimant's residual impairments. The Fund's expert testified that several suitable jobs were available. Her opinion regarding most of these jobs was rejected by the administrative law judge because she had given the prospective employers whom she had interviewed an overly optimistic description of claimant's substantial physical impairments. The judge concluded that in light of the uncontradicted medical testimony regarding those impairments, only one of the jobs described by the carrier's expert would be "suitable". He expressly found that claimant was unable to perform the other jobs from a physical standpoint. (Finding No. 7). Thus, no matter which side had the burden of going forward, evidence with respect to employment available in Tucson was adduced on both sides of the question.

Further, in light of claimant's extreme physical limitations, we do not believe that his failure to seek employment in Tucson or his questionable effort in St. George bear upon the burden of going forward with the evidence. Even if claimant had not presented expert evidence on the question, the uncontradicted testimony of the physical limitations and restrictions attributable to the sequelae of the industrial injury place him in the "odd-lot" [1] category. An employee in this category is one " 'who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist....' " 2 Larson, *supra,* § 57.51 at 10–164.22 (1982) (quoting *Lee v. Minneapolis St. Ry.,* 230 Minn. 315, 41 N.W.2d 433, 436 (1950)).

The testimony of both claimant and his doctor establishes that while claimant is able to do the kind of work for which he was trained, he does have serious limitations. The doctor described the specific impairments attributable to the industrial injury as follows: claimant could stand for no more than five minutes, sit for no more than thirty to forty-five minutes, walk no more than fifty feet, lift only two to three pounds repeatedly, bend or squat only once or twice an hour, could not crouch or kneel, and was required to change positions frequently. Claimant had diminished joint function in hands and knees and had a general loss of strength. Further, the heightened inflammatory process produced fatigue which seriously reduced claimant's ability to function and perform daily activities. The sensation of pain was greater when claimant was fatigued. The doctor

---

1. The phrase seems to have been coined by a judge of the King's Bench:

   "[T]here are cases in which the onus of shewing that suitable work can in fact be obtained does fall upon the employer who claims that the incapacity of the workman is only partial. If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well known branch of the labour market ... I should say that if the accident leaves the workman's labour in the position of an 'odd lot' in the labour market, the employer must shew that a customer can be found who will take it ....

   Cardiff Corp. v. Hall [1911] 1 K.B. 1009, 1020–21, quoted in 2 A. Larson, *Workmen's Compensation Law* § 57.51 at 10–164.50 (1982).

also stated that if allowed four rest periods totaling two hours during an eight-hour work day, claimant could probably work six hours per day. During the rest periods, the doctor recommended that claimant be separated from the stress of work and relax on an easy chair or cot for the half-hour intervals. Dr. Strong also stated that it was possible that claimant would have unpredictable exacerbations of the disease which would prevent him from working at all on certain days. The doctor's testimony corroborated claimant's own descriptions of the limits on his ability to function. He stated that his fatigue had increased greatly since the injury. One or two days per week he experienced so much pain and fatigue that he required complete rest.

█ We believe that the uncontradicted testimony summarized above requires that we adopt the odd-lot approach which our courts have followed in similar situations:

> If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant prima facie in the odd-lot category, the burden should be on the employer to show some kind of work is *regularly* and *continuously* available to the claimant.

*Larson, supra,* § 57.61, at 10–164.95 to –164.97 (emphasis supplied); *Employers Mutual Liability Insurance Co. of Wisconsin,* 25 Ariz.App. at 120, 541 P.2d at 583; *see also Phelps Dodge Corp., Morenci Branch v. Industrial Commission,* 90 Ariz. 379, 383, 368 P.2d 450 (1962).

The question, therefore, is whether the employer and carrier presented sufficient evidence of the availability of suitable employment. *Employers Mutual Liability Insurance Co. of Wisconsin, supra.*

### THE TEST FOR LOSS OF EARNING CAPACITY

█ The existence of a claimant's earning capacity is shown by "evidence that there is employment *reasonably available* which the claimant could *reasonably be expected to perform,* considering his physical capabilities, education and training ...."

*Germany v. Industrial Commission,* 20 Ariz. App. 576, 580, 514 P.2d 747, 751 (1973) (emphasis supplied); *Employers Mutual Liability Insurance Company, supra.* This is a two-phase inquiry; the existence of residual earning capacity can only be established by evidence of job opportunities that are both (1) suitable, i.e.: of the type the claimant could reasonably be expected to perform in light of his impaired physical or mental condition, and (2) reasonably available. *Germany v. Industrial Commission, supra; see also Dye v. Industrial Commission,* 23 Ariz.App. 68, 71, 530 P.2d 914, 917 (1975) (Jacobson, J., concurring). Findings should be made on each of these issues.

### Suitability—Work Which The Claimant Could "Reasonably Be Expected To Perform"

The test for the first issue has been formulated as follows:

> In determining whether the claimant can "reasonably be expected to perform" [the particular] employment [suggested] the following factors at a minimum ... must be shown: (1) the physical requirements of the particular employment under discussion; in this regard, ... specificity is required ...; (2) what education or training is required for the suggested employment; again ... abstractions are not sufficient ....
>
> Without the necessary specificity as to the particular employment suggested, I am unable to see how the trier of fact can relate that particular employment to the claimant's capabilities, both physical and mental.

*Dye v. Industrial Commission,* 23 Ariz.App. at 71–72, 530 P.2d at 917–18.

We think the foregoing analysis for determining whether the suggested employment is a job which the claimant could reasonably be expected to perform is correct. If the suggested employment meets that test, then the job may be considered suitable for the claimant; it is one which the worker can perform notwithstanding the results of the injury.

■ Though the question may be close, we think there is enough evidence in the record to support the administrative law judge's finding that claimant was physically able to perform the job of a counseling and advocacy coordinator for the Catholic Community Services in Tucson. Claimant's physical limitations are severe. Nevertheless, Dr. Strong did indicate that claimant could work within these limitations and that some work would be good for him. Even acknowledging the possibility that there would be unpredictable episodes of exacerbation when claimant would not be able to work at all, considering Dr. Strong's testimony and claimant's training and experience, we believe that the administrative law judge had support for a finding that claimant could reasonably be expected to perform the job at Catholic Community Services, assuming the appropriate allowances were made for his physical condition. The first part of the test—suitability of the suggested job—was met.[2]

## REASONABLE AVAILABILITY

We have much more trouble with the second part of the *Germany* test, which relates to whether the suggested job was "reasonably available". The administrative law judge found that "such jobs are available to him in the City of Tucson." (Finding No. 10).[3] The record on this point is sparse.

Claimant's employment consultant made contacts with numerous employers, describing the specific limitations to which Dr. Strong testified. Based on her interview with employers and the information from Dr. Strong, the consultant concluded that claimant was not employable in the open, competitive market in Tucson. The labor market consultant for the Fund also contacted various prospective employers to determine claimant's earning capacity. Of the opportunities which the Fund's consultant believed claimant was capable of performing, only two were available on a thirty-hour week basis. The administrative law judge made a finding that claimant was capable of performing one of these jobs, that of the counseling and advocacy coordinator. Based on this finding, the judge determined claimant's loss of earning capacity. Thus, the administrative law judge presumptively found that the position of counseling and advocacy coordinator was reasonably available to claimant. However, the consultant for the carrier testified that there were 63 applicants for this position, 50 of whom were qualified and 10 of whom were interviewed. The prospective employer indicated that claimant would probably have been interviewed for this position.

The court of appeals held that this evidence was sufficient to support the administrative law judge's finding of "reasonably available" employment, despite the competition for the job. However, the efforts of two consultants, interviewing numerous employers, resulted in uncovering one job position that claimant could perform. There was no evidence of how often this single position was likely to be open except that *one* opening had occurred in the two years preceding the hearing. Further, there was no testimony that this employer would hire someone with a preexisting serious impairment even though they were fully qualified to perform the work. There was no evidence of how claimant's physical impairments would affect his competitive chance of getting the job.

The universally recognized ultimate issue in determining loss of earning capacity is:

2. The record does not indicate whether suitable allowances for claimant's physical condition could or would be made at Catholic Community Services. For instance, claimant requires four half-hour rest periods each day. The record does not indicate whether such provisions would or could be made for claimant. Given the type of employer and its willingness to interview claimant despite his limitations, the administrative law judge *may* have been justified in inferring that allowance would be made for claimant's limitations.

3. Presumably "such jobs" means the "Counseling and Advocacy Coordinator" job with Catholic Community Services referred to in Finding No. 7. There was *no* testimony that such a position existed with other agencies or that it was a commonly found position.

to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much.

*Dye v. Industrial Commission, supra,* quoting *Davis v. Industrial Commission,* 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). *See also* 2 Larson, *supra,* § 57.51.

We believe that evidence of reasonable availability was totally lacking in this case and that there is no support for the finding of the administrative law judge. As indicated by the concurrence in *Dye, supra,* and by Justice Struckmeyer in *Dean, supra,* determination of the injured worker's ability to sell his services in a competitive, open market requires specific evidence—not abstractions or assumptions—regarding the number of positions available, the competition for those positions, the regularity and permanency of the positions, and, "possibly most importantly," the likelihood of the prospective employer giving the injured applicant as much consideration as those who are not handicapped or who have not experienced industrial injury. We recognize that when opportunity is narrow, the impaired or injured worker is often the last to be hired and the first to be fired. *Jordan v. Decorative Co.,* 230 N.Y. 522, 525, 130 N.E. 634, 635–36 (1921). Evidence on this problem is also to be considered. *Dean v. Industrial Commission, supra; Ossic v. Verde Central Mines,* 46 Ariz. 176, 49 P.2d 396 (1935). After considering all these factors, if the finder of fact can conclude that there is a reasonable *probability*[4] that the injured worker can find suitable employment on a *regular* basis, then and only then may it be found that such employment is "reasonably available." *See also* Larson, *supra,* § 57.51, at 10–164.49.

In the case at bench, there was no evidence that Catholic Community Services would or could consider an applicant with claimant's serious limitations on a competitive basis with other applicants not so limited. Even if we were to assume—and we

should not—that a charitable organization would place claimant on an equal footing with the other applicants, we would be left with applicant having one chance in eleven of getting this *single job.* We do not believe that this fulfills the test of "probable dependability" of selling one's services in a competitive market. *Dye,* 23 Ariz.App. at 72, 530 P.2d at 918.

We hold, therefore, that the finding that other employment was "reasonably available" for claimant is unsupported by the record. *Dean v. Industrial Commission, supra; Dye v. Industrial Commission, supra.* The two-part requirement or test of *Germany v. Industrial Commission, supra,* was not satisfied. Accordingly, the opinion of the court of appeals is vacated, the award of the Commission is set aside, and the cause is remanded.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

4. Justice Struckmeyer's phrase in *Dean, supra,* was "[m]aterial evidence to show, with *reasonable certainty,* that a claimant could secure a position." 113 Ariz. at 287, 551 P.2d at 556 (emphasis supplied).