NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MAX NIEVES, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

AGRIUM U.S., INC., *Respondent Employer*,

ACE AMERICAN INSURANCE CO. C/O ESIS/ACE USA (AZ),
*Respondent Carrier.*

No. 1 CA-IC 14-0068
FILED 7-21-2015

Special Action – Industrial Commission
ICA Claim No. 20101-940007
Carrier Claim No. C494C1679073/888
Joann C. Gaffaney, Administrative Law Judge *Retired*

**AWARD AFFIRMED**

COUNSEL

Barton Baker, Attorney at Law, Yuma
By Barton L. Baker
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Klein, Doherty, Lundmark, Barberich & La Mont, P.C., Tucson
By Eric W. Slavin
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Diane M. Johnsen joined.

---

**C A T T A N I**, Judge:

**¶1**          This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review denying any disability benefits. Claimant Max Nieves presents one issue on appeal: whether the administrative law judge ("ALJ") improperly relied on the opinion of labor market expert Lisa Clapp in concluding that he has not suffered a loss of earning capacity ("LEC"). For reasons that follow, we affirm the award.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**          On April 15, 2010, Nieves suffered a shoulder injury while working as a truck driver for the respondent employer, Agrium US Inc. ("Agrium"). His condition eventually became medically stationary, and his claim was closed with a one percent unscheduled permanent partial impairment. The ICA then entered its findings and award for a 53.02% LEC, which entitled Nieves to receive $780.02 per month in disability benefits. Nieves timely protested the ICA's award.

**¶3**          The ALJ heard testimony from Nieves and two labor market experts, then found that Nieves had no LEC. Nieves requested administrative review, and the ALJ supplemented and affirmed the award.

**¶4**          Nieves then brought this appeal. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.[1]

---

[1]          Absent material revisions after the relevant date, we cite a statute's current version.

2

## DISCUSSION

**¶5**       In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

**¶6**       Nieves argues that the ALJ erred by adopting Clapp's testimony that work as a "no touch" truck driver was suitable and reasonably available employment for him. To establish a claimant's residual earning capacity, there must be evidence of job opportunities that are (1) suitable, *i.e.*, which the claimant could reasonably be expected to perform considering his physical capabilities, education, and training and (2) reasonably available. *See Germany v. Indus. Comm'n*, 20 Ariz. App. 576, 580, 514 P.2d 747, 751 (1973).

**¶7**       The burden of proving an LEC is on the claimant. *See Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983). The claimant must establish he is unable to return to date-of-injury employment and also must either present evidence of a good-faith effort to obtain other suitable employment or testimony from a labor market expert to establish his residual earning capacity. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266, 717 P.2d 943, 945 (App. 1986). If the claimant testifies he made a good-faith effort but could not find work, the burden of going forward with contrary evidence to establish suitable and reasonably available employment shifts to the employer and carrier. *Zimmerman*, 137 Ariz. at 580, 672 P.2d at 924.

**¶8**       In this case, Nieves performed a good-faith work search and presented testimony from labor market expert Erin Welsh. Welsh testified she agreed with the ICA's findings and award, which concluded that Nieves could work full time as a fast food worker and earn minimum wage.

**¶9**       To meet the shifted burden of proof, Ace American Insurance Co. ("Ace") presented testimony from Clapp, who agreed Nieves could work in a fast food restaurant. But Clapp also testified that work as a "no touch" truck driver was suitable for and reasonably available to Nieves and would result in no LEC. Clapp explained that a "no touch" truck driver does not have to load or unload cargo. This type of driving typically is

regional, with trips limited to one to three days.[2]  Clapp testified that this job constitutes medium-duty work, and that Dr. Bailie's medical report did not contain any findings that would suggest that Nieves would be unable to perform such work.  Clapp noted that after his industrial injury, Nieves had renewed his commercial driver's license ("CDL"), which required him to pass a medical examination, and he had work experience performing this type of driving.[3]  Nieves testified that  he has been looking for work as a driver, and that he has previously worked as a driver, including driving trucks locally, throughout "the whole border area," and "towards Flagstaff, . . . Phoenix, and El Centro, California."  He also acknowledged driving a truck to the Oakland, California area.

¶10        The labor market expert's role is to consider input from the treating physician regarding the claimant's physical capabilities and to match them to requirements of specific jobs in the open labor market.  *See Tucson Steel Div. v. Indus. Comm'n*, 154 Ariz. 550, 556, 744 P.2d 462, 468 (App. 1987).  Although the expert's experience and training render his or her opinion admissible, "this type of evidence is not so completely outside the understanding of the average layman, that a contrary conclusion cannot be reached."  *Le Duc v. Indus. Comm'n*, 116 Ariz. 95, 98, 567 P.2d 1224, 1227 (App. 1977).  "As with most expert opinions, the trier of fact is entitled to consider it, but give it only the weight to which he deems it is entitled."  *Id.*

¶11        In determining a claimant's residual earning capacity, the ALJ must consider "any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."  *See* A.R.S. § 23-1044(D).  In this case, the ALJ resolved the conflict between the labor market experts in favor of Clapp's testimony and found that Nieves could work as a "no touch" truck driver with no LEC.

¶12        Nieves asserts that Clapp failed to present an accurate picture of his limited English language skills to prospective employers, and for that

---

[2]        Clapp contrasted this with over-the-road truck drivers, who drive from coast to coast and may be on the road for up to three weeks at a time virtually living out of their trucks.

[3]        On cross-examination, Welsh agreed that Nieves has a current CDL and that the medical report relating to his injury did not suggest that Nieves would be precluded from working as a "no touch" truck driver.

reason, the jobs that she proposed are not suitable for or reasonably available to him. We disagree.

¶13   Clapp testified regarding the profile she presented to prospective employers:

> Q. [By Nieves's counsel] Okay. Did your profile of Mr. Nieves include the fact that he had very limited English, spoke mainly only Spanish?
>
> A. [Clapp] It indicated that his English was limited but that that had not precluded him from working as a truck driver for many years prior to that.
>
> Q. Well, it didn't preclude him in Yuma, Arizona, where most of the people are Hispanic, but did you ask these employers that you surveyed here - - did you tell them that he primarily spoke only Spanish?
>
> A. I did not. And Mr. Nieves testified himself that he drove a truck in California and in Arkansas as well which is where he learned most of his English.[4]
>
> Q. Well, let me - - let me correct you. I believe he worked for Tyson at a poultry plant in Arkansas.
>
> A. He also reported that he drove a truck up there.
>
> Q. Okay. Did you ask any of these truck positions that you surveyed whether or not language made a difference to them in decision to hire a person, whether they could take directions and, you know, that kind of thing in Spanish?
>
> A. You know, I didn't ask that question in particular. I went out on a limb and assumed because he had worked for at least three different employers as a truck driver and his English-speaking capabilities didn't preclude him from doing that

---

[4]  Clapp reviewed Nieves's January 29, 2013 deposition testimony as part of her LEC evaluation. Clapp stated that Nieves had indicated that he can understand a little English, and that he learned English when he worked in Arkansas packing chicken for Tyson.

that he had demonstrated enough proficiency to get by with what he would need as a truck driver.

Q. Okay. You just made the assumption that it wouldn't matter?

A. I made the assumption that because he had demonstrated the ability to work as a truck driver for at least three employers previously and do so successfully where his English-speaking capability was not an issue that he would be able to do that post-injury.

Thus, although Clapp acknowledged that she did not specifically ask prospective employers whether English skills were required, she correctly informed them that Nieves's English was limited.

¶14        We conclude that the ALJ did not abuse her discretion by finding that Clapp accurately portrayed Nieves to prospective employers, that Nieves was looking for work as a truck driver, had a current CDL, and had successfully worked as a driver for several different companies. Accordingly, we affirm the ALJ's determination that Nieves has not suffered a loss of earning capacity.

## CONCLUSION

¶15        The award is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED : ama