NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PATRICIA PALLADINO, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

FAIRMONT SCOTTSDALE PRINCESS, *Respondent Employer*,

AMERICAN ZURICH INSURANCE CO., *Respondent Carrier.*

No. 1 CA-IC 15-0011
FILED 2-16-2016

Special Action – Industrial Commission
ICA Claim No. 20132-240135
Carrier Claim No. 2080291760

Robert F. Retzer, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Law Office of Stephen L. Weiss, Phoenix
By Stephen L. Weiss
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent Industrial Commission of Arizona*

Lester, Norton & Brozina, P.C., Phoenix
By Rachel P. Brozina, Steven C. Lester, Christopher S. Norton
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

**D O W N I E**, Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision on review for an unscheduled permanent partial disability.  One issue is presented: whether the administrative law judge ("ALJ") erred by basing the award on full-time employment.  Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Patricia Palladino injured her back while employed as an aesthetician by the respondent employer, Fairmont Scottsdale Princess ("Fairmont").  She filed a workers' compensation claim that was accepted for benefits.  The ICA entered a notice of average monthly wage in the amount of $2,810.44.  Palladino received conservative medical treatment, and her condition became stationary with ongoing physical limitations.

**¶3**        The respondent carrier, American Zurich Insurance Company ("American"), closed Palladino's claim with an unscheduled permanent partial impairment and a supportive care award.  The ICA then issued its findings and award for unscheduled permanent partial disability benefits.  It found Palladino had sustained an unscheduled 16% permanent partial impairment, which resulted in a 31.36% loss of earning capacity and entitled her to $484.76 per month in disability benefits.  Palladino timely protested the findings and award and requested a hearing.

**¶4**        The ALJ heard testimony from Palladino, her supervisor, Fairmont's human resources manager, and two labor market experts.  The ALJ thereafter entered an award for an unscheduled permanent partial disability.  Palladino requested review, but the ALJ affirmed the award.

Palladino then timely sought this Court's review. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**DISCUSSION**

**¶5**        In reviewing ICA findings and awards, we defer to the ALJ's factual findings, but we review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**¶6**        Palladino contends the ALJ erred by basing her post-injury earning capacity on full-time employment. The ALJ found:

> In reference to the number of hours the Applicant can work, testimony from Brennan Evans, the Manager Director of Well and Being Spa at Defendant Employer was that the Applicant was a full time employee. Further, there are no hourly restrictions per week on the Applicant's ability to work. Therefore, the undersigned finds that jobs as a Receptionist for 40 hours a week at $9.67 per hour are both suitable and available to the Applicant. The undersigned finds [that] <u>Elias v. Industrial Commission</u> . . . is distinguishable from this case and that in <u>Elias</u> the Applicant was a Nurse who only sought part-time work which is not the case here. . . .

**¶7**        The burden of proving a loss of earning capacity ("LEC") is on the claimant. *See, e.g., Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983). A claimant must establish an inability to return to date-of-injury employment and either make a good faith effort to obtain other suitable employment or present testimony from a labor market expert to establish her residual earning capacity. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266 (App. 1986). In determining residual earning capacity, the ALJ must consider

> any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury.

*See* A.R.S. § 23-1044(D).

¶8         Fairmont made reasonable accommodations to adapt Palladino's job duties to physical limitations resulting from the industrial injury.  Palladino attempted to return to her job as an aesthetician but was physically unable to perform necessary duties.  Palladino testified she averaged 30 hours of work per week at Fairmont's spa. However, Brennan Evans, managing director of the spa, testified Palladino was a full-time aesthetician.  He explained:

> A. [Evans] We . . . bid our work schedule as we need to to meet the needs of our clientele.  And when we have a bid, we bid that based off of seniority, so the most senior person gets selection of shifts first, and we put together what is their work schedule from those bidded shifts.

> Q. [By Ms. Brozina] Tell me what goes into determining somebody's seniority status.

> A. Seniority is considered to be the hire date into the position that they are currently in.

> Q. And what was Ms. Palladino's seniority status when she was employed with you?

> A. I believe she was number three.

> Q. So number three out of roughly 13?

> A. Correct.

> Q. Could you tell us how you determine which employee performs what service or gets whatever customer is scheduled for the day?

> A. . . . [W]e basically book based off of seniority on the most senior next available person that does that service.

> . . .

> Q. So what do your employees do if they're on the premises but they don't have a service booked?

4

A. They are required to be readily available in case we have a walk-in that decides to book a service. We have a break room for them to stay in where we have a TV. They can read books, they can relax with iPads and be at the ready.

¶9        Fairmont also presented labor market testimony from Lisa Clapp. Clapp testified that a full-time aesthetician at Fairmont typically worked seven-and-a-half hour shifts, five days a week. Depending on the season and spa bookings, shifts could be longer or shorter.

¶10        The testimony by Clapp and Evans supports the ALJ's conclusion that Palladino was a full-time employee, notwithstanding variances in her hours. Palladino had no work restrictions at the time of her industrial injury and had high seniority for spa bookings. The evidence further established that Palladino remains physically capable of working full-time within her industrially related physical limitations. *See, e.g., Hoffman v. Brophy*, 61 Ariz. 307, 314 (1944) (claimant has a duty to mitigate her damages by minimizing any loss of earnings).

## CONCLUSION

¶11        For the foregoing reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED: ama