NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FOUR SEASONS RESORT SCOTTSDALE, *Petitioner Employer*,

AMERICAN ZURICH INSURANCE COMPANY, *Petitioner Carrier,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

PETKO CVIJETIC, *Respondent Employee*.

No. 1 CA-IC 16-0039
FILED 6-13-2017

Special Action - Industrial Commission
ICA Claim No. 20110-840193
Carrier Claim No. 2080234273001
J. Matthew Powell, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Lester, Norton & Brozina, P.C., Phoenix
By Rachel P. Brozina, Steven C. Lester, Christopher S. Norton
*Counsel for Petitioners Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Snow, Carpio & Weekley, PLC, Phoenix
By Chad T. Snow
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill[1] delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Kenton D. Jones joined.

---

**G E M M I L L**, Judge:

**¶1**        Petitioner employer, Four Seasons Resort Scottsdale and petitioner carrier, American Zurich Insurance Company (collectively "American"), seek special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for permanent total disability benefits, arguing the administrative law judge ("ALJ") erred in finding that Petko Cvijetic, the respondent employee, sustained a total loss of earning capacity ("LEC") as a result of the industrial injury.  Because the evidence reasonably supports the ALJ's award and no legal error occurred, we affirm.

## BACKGROUND

**¶2**        On August 16, 2010, Cvijetic injured his low back while working as a laundryman for Four Seasons.  He filed a workers' compensation claim, which was accepted for benefits by American Zurich. Cvijetic received conservative medical treatment including physical therapy, but he reported "no improvement in change in his symptoms."[2] Following an independent medical examination ("IME") finding Cvijetic stationary with no permanent impairment, American issued a notice of claim status which terminated benefits effective August 8, 2011.

---

[1]        The Honorable John C. Gemmill, Retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        The medical records also reveal a prior industrial injury that occurred in September 2009, when Cvijetic was struck in the low back by a golf cart operated by his coworkers.

¶3         Cvijetic protested the closure of his claim and the ICA held a hearing as to whether Cvijetic was medically stationary and thereafter entered an award allowing his claim to remain open for continuing medical benefits.  Following a repeat IME in July 2013, Cvijetic's claim was closed with no permanent impairment.  Cvijetic protested, an ICA hearing was held, and an ALJ entered an award finding Cvijetic stationary with an unscheduled permanent partial impairment and referred the claim to the ICA for an LEC determination.[3]  The ICA entered an administrative award finding that Cvijetic had sustained a 15% permanent impairment and a 32.85% LEC, and that he was entitled to receive $329.44 per month in permanent disability benefits.

¶4         Cvijetic timely requested an ICA hearing, and the ALJ heard testimony from Cvijetic, his treating physician, Sanjay Patel, M.D., an independent medical examiner, Gary J. Dilla, M.D., and two labor market experts, Richard A. Prestwood and Lisa A. Clapp.  The ALJ entered an award for permanent total disability benefits.  American requested administrative review, but the ALJ affirmed the award.  American next brought this special action.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10.

## ANALYSIS

¶5         When reviewing the ICA's findings and awards, we defer to the ALJ's factual findings and consider the evidence in the light most favorable to upholding the award, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003); *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶6         American argues that the ALJ legally erred by finding that Cvijetic sustained a total LEC as a result of the industrial injury, because he did not make a good faith search for post-injury work.  The burden of proving an LEC is on the claimant.  *See, e.g.*, *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983).  Cvijetic has an affirmative burden to establish his inability to return to date-of-injury employment and either make a good faith effort to obtain other suitable employment or present testimony from a labor market expert to establish his residual earning capacity.  *See D'Amico*

---

[3]        The ICA makes an initial determination of whether a permanent impairment has resulted in an LEC.  *See* Ariz. Rev. Stat. § 23-1047(A).

*v. Indus. Comm'n*, 149 Ariz. 264, 266 (App. 1986); *see also Landon v. Indus. Comm'n*, 240 Ariz. 21, 26–27, ¶ 18 (App. 2016).

**¶7**        Cvijetic testified that after his industrial injury, he returned to light duty work at Four Seasons, but was let go when he was unable to perform his regular work.  Both testifying physicians confirmed that Cvijetic could no longer perform his regular work as a laundryman.  Dr. Patel testified that Cvijetic could return to work "in some sort of modified capacity," and Dr. Dilla stated that Cvijetic could work "in a light medium capacity." [4]

**¶8**        Cvijetic did not perform a good faith work search because he did not believe he could perform sedentary work nor work within Dr. Patel's recommended work restrictions.  He testified that he only looked for work following the industrial injury so that he could receive a monthly benefit, and he had not looked for work during the past three years.

**¶9**        Instead of proving a good faith work search, Cvijetic presented expert labor market testimony from Mr. Prestwood.  *See D'Amico*, 149 Ariz. at 266; *see also Landon*, 240 Ariz. at 26–27, ¶ 18.  In an LEC proceeding, the medical expert's role is to identify the claimant's anatomical or functional impairments.  *See, e.g., Adkins v. Indus. Comm'n*, 95 Ariz. 239, 243 (1964).  The labor market expert's role is to receive that medical input from the treating physicians regarding the claimant's physical capabilities and match it to the requirements of specific jobs in the open labor market.  *See Tucson Steel Div. v. Indus. Comm'n*, 154 Ariz. 550, 556 (App. 1987).

**¶10**        In this case, the ALJ resolved the medical conflict between the key opinions expressed by the physicians in favor of Cvijetic's treating physician, Dr. Patel.  *See Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975) (explaining that when expert medical testimony conflicts, it is the ALJ's duty to resolve those conflicts).  Dr. Patel testified that the industrial injury permanently aggravated Cvijetic's preexisting degenerative disc disease by causing several lumbar disc herniations.  The doctor identified the

---

[4]    An opinion of a physician, however, absent proof that the physician possessed special knowledge of job requirements, is insufficient to prove a claimant is physically capable of performing a specific job.  *See Atkins v. Indus. Comm'n*, 95 Ariz. 239, 243 (1964); *Davis v. Indus. Comm'n*, 16 Ariz. App. 535, 537–38 (1972).

mechanism of injury as both being struck in the low back by a golf cart (in 2009) and lifting 150 pounds of towels (in 2010).

¶11     Dr. Patel testified that due to "significant ongoing pain," Cvijetic is limited to working six hours per day, thirty hours per week. During a workday, Cvijetic can stand and walk for a total of one hour. He can sit for thirty minutes, stand for fifteen minutes, and walk for ten minutes; squat, crawl, and climb occasionally; lift and carry ten pounds continuously, twenty pounds frequently, and up to fifty pounds occasionally. Cvijetic also uses a cane due in part to the residual impact of the industrial injury. Dr. Patel noted that he communicated with Cvijetic through an interpreter, because he speaks Serbian.

¶12     In establishing an LEC, the objective is to determine as nearly as possible whether the claimant can sell his services in the open, competitive labor market, and for how much. *Davis v. Indus. Comm'n*, 82 Ariz. 173, 175 (1957). In determining a claimant's residual earning capacity, the ALJ must consider any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee can perform after the injury, any wages received for work performed after the injury, and the age of the employee at the time of injury. *See* A.R.S. § 23-1044(D).

¶13     Prestwood performed an earning capacity evaluation. He interviewed Cvijetic through a bilingual translator. The fifty-nine-year-old claimant had twelve years of formal education in Bosnia, where he worked in construction. He immigrated to the United States as a refugee in 1999, and his primary languages remain Serbo-Croatian and Russian.

¶14     In the U.S., Cvijetic's work experience consisted of installing swimming pool tile and being a stone mason, a dishwasher, a hotel laundryman, and performing Taser assembly work. Relying on this information in combination with Dr. Patel's work restrictions, Prestwood testified that Cvijetic is not readily employable in the open labor market. It was his opinion that Cvijetic is an "odd-lot" employee, and has sustained a total LEC.

¶15     An odd-lot employee is one who is sufficiently injured that the services he can perform are so limited in quality, dependability, or quantity that a reasonably stable labor market for him does not exist. *See Zimmerman*, 137 Ariz. at 581 n.1. As recognized by Professors Larson, this designation does not require "utter and abject helplessness" before a

claimant can be considered to have a permanent total disability. 7 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 83.01, at 83-2 (Supp. 2016).

**¶16** Prestwood testified that thirty-hour-per-week jobs are rare in this economy. Based on Cvijetic's industrially related physical restrictions, Prestwood concluded he cannot return to any of his previous types of employment and his prior employment does not provide him with any transferable skills. Further, Prestwood explained that very few employers have other employees that could translate for Cvijetic with his language restrictions.

**¶17** The ALJ adopted Prestwood's opinion as more probably correct, and based on his testimony, found that the odd-lot doctrine applied. Once a claimant is found to be an odd-lot employee, the burden of going forward with contrary evidence shifts to the employer and carrier. *See, e.g.*, *Zimmerman*, 137 Ariz. at 580. Although American argues that without a good faith work search, the burden did not shift, we disagree. *D'Amico* and *Landon* allow a claimant to meet his burden of proof by presenting expert testimony.

**¶18** Although American presented labor market testimony from Ms. Clapp to establish suitable and reasonably available employment for Cvijetic, the ALJ resolved the testimonial conflict in favor of Prestwood's opinions. *See Rent A Center v. Indus. Comm'n*, 191 Ariz. 406, 408, ¶ 3 (App. 1998) (confirming an ALJ is free to resolve conflicts in expert testimony by adopting the opinion of one labor market expert over another); *see also Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988) (explaining resolution of conflicting expert opinions may include consideration of each expert's qualifications, experience, and basis for opinion).

**CONCLUSION**

¶19      Based on the ALJ's permissible resolution of the evidentiary conflicts, the record supports her finding that Cvijetic is not currently employable in the open labor market. Because the ALJ also properly applied the law, we affirm the award.

