NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANTHONY G. FAGNANI, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

HONEYWELL INTERNATIONAL, INC., *Respondent Employer*,

HONEYWELL INTERNATIONAL, *Respondent Carrier*.

No. 1 CA-IC 19-0011
FILED 10-31-2019

Special Action - Industrial Commission
ICA Claim No. 20020-040463
Carrier Claim No. 0266000210168
The Honorable Rachel C. Morgan, Administrative Law Judge

**AFFIRMED**

COUNSEL

Arizona Injury Law Group, PLLC, Phoenix
By Briana E. Chua
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Wright Welker & Pauole PLC, Phoenix
By Linnette R. Flanigan, Shannon Lindner
*Counsel for Respondent Employer and Respondent Carrier*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

**¶1**        Petitioner Anthony G. Fagnani ("Fagnani") appeals from an Industrial Commission of Arizona ("ICA") finding of no loss of earning capacity after he suffered a work-related injury and sustained a 7% permanent impairment to his shoulder. He argues that the Administrative Law Judge ("ALJ") used the wrong legal standard and that the evidence produced at the hearing below does not support the ALJ's findings. Because there is substantial evidence in the record to support the ALJ's conclusion that Fagnani failed to prove a loss of earning capacity, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Fagnani worked for self-insured Respondent Honeywell International, Inc. for thirty-six years as a machinist and in other roles. In 2001, he suffered a left shoulder injury while on the job, which required two surgeries to repair the damage. His claim was accepted for benefits and eventually closed in 2003 with a 7% permanent disability and no work restrictions. He continued working in his pre-injury job, and, as such, sustained no loss of earning capacity and received no permanent wage-related benefits. Fagnani testified that when his shoulder bothered him on the job, he received assistance from co-workers and Honeywell's on-site medical department. He continued working the same job until 2014.

**¶3**        In 2014, Fagnani suffered a non-industrially-related heart attack during which he experienced hypoxia. He was resuscitated but sustained permanent cognitive deficits as a result of the oxygen deprivation. After the heart attack, he was unable to return to his employment, and received long-term disability benefits from Honeywell. When the one-year term of those benefits expired, Fagnani met with Honeywell's HR and medical department to explore the possibility of returning to work in his previous position. As part of that process, he

2

informed Honeywell about his cognitive deficits. Honeywell has a policy of trying to accommodate physical restrictions for returning employees; however, while Fagnani was touring the facility, he found the work layout had been renovated in his absence, and he felt the amount of new information he had to process was "overwhelming." As a result, Fagnani unilaterally concluded he could not adequately perform his job, and advised Honeywell that he would retire rather than complete the job reentry process. Honeywell then terminated Fagnani's employment in 2015, for failure to return to work after a long-term disability.

¶4 Fagnani later testified he is incapable of doing his old job because of his cognitive deficits. He receives Social Security Disability Insurance benefits and has not looked for work since the heart attack.

¶5 In 2015, Fagnani's left shoulder began to bother him again, and he sought a medical evaluation. Because his orthopedic surgeon recommended further surgery, Fagnani petitioned to reopen his worker's compensation claim. The claim was reopened by Honeywell for medical evaluation, but closed shortly thereafter based on an Independent Medical Examination performed by Neal L. Rockowitz, M.D., a board-certified orthopedic surgeon, who concluded that surgery was not indicated and recommended supportive care. Dr. Rockowitz also found that Fagnani had work restrictions due to his left shoulder impairment, consisting of no overhead lifting, no lifting over twenty-five pounds with both upper extremities, and no repetitive use of the left arm and shoulder. Fagnani challenged Honeywell's closure of the claim, and in 2016, the ICA issued an Award adopting the medical opinions of Dr. Rockowitz and closing the claim. Fagnani did not renew any discussions with Honeywell as to whether it could re-employ him with accommodations for the shoulder restrictions recommended by Dr. Rockowitz.

¶6 In 2017, the ICA issued its administrative Findings and Award for Unscheduled Permanent Partial Disability awarding Fagnani disability benefits of $592.66 per month for a 44.90% loss of earning capacity. Both Fagnani and Honeywell challenged that award, with Fagnani arguing that he had a greater loss than reflected in the Award and Honeywell arguing that Fagnani had no loss of earning capacity related to the 2001 industrial injury. A hearing was held at which the ALJ heard testimony from Fagnani, two medical expert witnesses, a Honeywell representative, and two labor market experts.

¶7 The Honeywell representative testified that Honeywell strives to accommodate employees with work restrictions and was willing

to do so for Fagnani. She testified that in 2015, Fagnani began going through the process of determining whether Honeywell could accommodate his cognitive restrictions and put him back in his former position or a similar one, but that Fagnani unilaterally abandoned that process. At that point, Honeywell terminated his employment, considering his voluntary decision as a failure to return to work after a long-term disability.

**¶8** The two medical experts, Demitri A. Adarmes, M.D., and Dr. Rockowitz, agreed that Fagnani has work restrictions related to the shoulder injury. Although they differed about how much weight he could lift, both experts agreed that Fagnani has restrictions with overhead lifting and lifting with both arms, as well as with repetitive motion of the left arm and shoulder. Fagnani presented evidence from a labor market analyst about jobs that were available in the marketplace, such as a parking lot attendant or security guard, given Fagnani's shoulder-related restrictions. Honeywell presented evidence from a labor market analyst who testified that, apart from his cognitive issues, Fagnani could return to his former job or something similar at Honeywell. In the alternative, she testified about other jobs Fagnani could perform at a lower wage.

**¶9** The ALJ issued an award finding that Fagnani "never availed himself [of] the process" of returning to work for Honeywell with whatever accommodations might have been available. Based on that finding, she concluded that Fagnani failed to meet his burden of showing that he could not return to his former employment due to restrictions from his industrial injury and, therefore, had "not sustained a loss of earning capacity causally related to his industrial injury."

**¶10** Fagnani requested review of the ALJ decision. The decision was affirmed upon review, albeit with the modification of adding several additional findings related to the medical testimony. This statutory special action followed. We have jurisdiction under Arizona Revised Statutes sections 12-120.21(A)(2) and 23-951(A), and by Arizona Rule of Procedure for Special Actions 10.

## STANDARD OF REVIEW

**¶11** In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

## ANALYSIS

¶12　　　　To show a loss of earning capacity, an injured worker with an unscheduled injury must show an "inability to perform the job at which he was injured and to get other work which he can perform in light of his physical impairments." *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983).

¶13　　　　The record shows that Fagnani abandoned his attempt to return to his job for reasons unrelated to his shoulder injury. Nothing in the record shows that his shoulder restrictions were the cause of his decision; thus, those restrictions did not prevent his return to work. Since Fagnani has the burden to show that his shoulder impairment prevents him from performing the job he had before the injury, or a similar job, it was incumbent upon him to show that his job at Honeywell was not available to him because of his shoulder restrictions.

¶14　　　　Every injured person must seek to minimize loss, including loss of earning capacity. *Hoffman v. Brophy*, 61 Ariz. 307, 314 (1944) ("It is, of course, a rule that every injured person must seek to minimize his loss, and to put forth an active effort to procure such employment as he is able to."). To show a loss of earning capacity then, a claimant must demonstrate reasonable efforts to obtain employment in the area of his residence. *Felker v. Indus. Comm'n*, 134 Ariz. 19, 21 (App. 1982). This requirement includes returning to the date-of-injury employment if it is available. *Landon v. Indus. Comm'n*, 240 Ariz. 21, 27, ¶ 18 (App. 2016). As the ALJ found here, employment with Honeywell was available, but Fagnani abandoned that opportunity, unilaterally deciding that he could not return to work. The ALJ concluded that Fagnani had not shown a loss of earning capacity because he had failed to show that his work-related restrictions prevented him from returning to his employment with Honeywell. We find substantial evidence in the record to support this conclusion.

¶15　　　　Fagnani argues on appeal that the ALJ applied an incorrect standard to his claim for loss of earning capacity. He bases his argument on language in the award that may or may not contain a typographical error. We need not address this argument because it is clear that the ALJ applied the correct standard in reaching her conclusion. As required by the law and as correctly cited in the award, the ALJ recognized that the initial burden was on Fagnani to show that he could not return to his pre-injury job due to the shoulder restrictions. *See Dean v. Indus. Comm'n*, 113 Ariz. 285, 287 (1976) (explaining the burden shifts to the employer only if the worker shows reasonable efforts to obtain employment). After the ALJ

found that Fagnani failed to meet his initial burden, there was no need for further analysis.

¶16      Fagnani also argues on appeal that the evidence does not support the ALJ's conclusion that he failed to meet his burden. We have already determined that it does, but we note here that Fagnani seems to misunderstand the ALJ's decision. The ALJ concluded that because his pre-injury job with reasonable accommodations was likely available and Fagnani abandoned that opportunity, albeit for reasons unrelated to his shoulder impairment, and because he failed to look for any other work for the same reason, he has not shown a loss of earning capacity related to the shoulder impairment. If Fagnani cannot be employed, he has not shown that it is because of his shoulder restrictions.

## CONCLUSION

¶17      Because Fagnani has not shown a loss of earning capacity due to his industrial injury, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

6