NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MANUEL RODRIGUEZ, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

HEIN HETTINGA, *Respondent Employer*,

ZENITH INSURANCE COMPANY, *Respondent Carrier*.

No. 1 CA-IC 19-0037
FILED 7-9-2020

Special Action - Industrial Commission
ICA Claim No. 20141-560052
Carrier Claim No. 615226
The Honorable Colleen Marmor, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Snow Carpio & Weekley PLC, Phoenix
By Xavier A. Carpio
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent ICA*

Lundmark, Barberich, LaMont & Slavin P.C., Phoenix
By R. Todd Lundmark
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Chief Judge Peter B. Swann joined.

---

**T H U M M A**, Judge:

¶1        Manuel Rodriguez claims that he has a total loss of earning capacity (LEC) caused by an industrial accident. An administrative law judge (ALJ) for the Industrial Commission of Arizona (ICA) ruled that he has only a partial LEC. Because the ALJ did not use the proper legal standard, and because the evidence does not support her finding that suitable employment is available to Rodriguez, the award is set aside.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2013, at age 55, Rodriguez suffered a partially torn rotator cuff in his right shoulder while working as a birthing assistant for a dairy farm owned by Hein Hettinga. Zenith Insurance Company, the worker's compensation insurance carrier, accepted the claim, and later closed it with a 15 percent permanent impairment to his right upper extremity, with work restrictions.[1] In April 2018, the ICA determined that Rodriguez suffered a 42.67 percent reduction in his monthly earning capacity. Rodriguez filed a timely request for hearing.

¶3        The parties do not dispute that Rodriguez has medically recommended work restrictions. It is recommended that he should avoid using his right arm above chest level and should not pull, push, or lift more than ten pounds or raise his right arm above shoulder level, including any overhead work. The dispute is about the suitability and availability of employment for Rodriguez.

¶4        Rodriguez, who is now 62, has worked in agriculture his entire life. He lives in Gila Bend, a rural community. He speaks Spanish,

---

[1] Due to other health factors, surgery that normally would be used to treat the condition is not advised.

2

does not read or write Spanish or English and has had no formal education. He is right-handed, and his right shoulder was permanently injured. He does not own a computer or smartphone and cannot type. He has an Arizona driver's license, but not a reliable car. The parties agree that he cannot return to work in the agricultural field because of his physical limitations caused by his industrial injury.

¶5        Rodriguez and a labor market expert from each side testified at the evidentiary hearing before the ALJ. Both labor market experts also provided written reports. Rodriguez testified that he applied for several jobs in Gila Bend, including positions as a fast-food worker and at retail stores. However, he was turned down each time.[2]

¶6        Richard Prestwood was Rodriguez' labor market expert. Prestwood testified that Rodriguez would not be able to find suitable employment in the Gila Bend area, either part-time or full-time. Prestwood concluded that Rodriguez could not work at a fast-food restaurant, given his inability to read and write, which would preclude him from reading food labels, taking meal orders and operating a cash register. His physical restrictions also keep him from doing most lifting tasks. Nor could Rodriguez clean windows that were higher than shoulder level or lift full mop buckets. Prestwood testified that, physically, Rodriguez could make sandwiches or "flip burgers," but he would not be able to read orders. Prestwood described Rodriguez as "a borderline [fast-food job] applicant at best." He concluded that, under all the circumstances, Rodriguez was an "odd lot worker," a term of art in workers' compensation matters discussed more fully below.

¶7        Brett Heath, the carrier's labor market expert, testified that Rodriguez could get a job as a fast-food worker because it is entry-level work in which skills are "learn[ed] through demonstration." Heath surveyed several fast-food restaurants about whether they would hire someone with Rodriguez' background and work restrictions. He testified that he specifically informed restaurants about (1) Rodriguez' work

---

[2] The ALJ did not make a finding concerning Rodriguez' credibility, meaning his testimony is treated as credible. *See Villanueva v. Indus. Comm'n*, 148 Ariz. 285, 289 (App. 1985) ("assuming [a] claimant's credibility" where ALJ made no specific credibility determination and where "claimant's credibility was a material issue and a specific finding that claimant was credible or lacked credibility was necessary"); *Joplin v. Indus. Comm'n*, 175 Ariz. 524, 528 (App. 1993) (when no credibility finding is made, reviewing court will accept the facts as stated by claimant).

restrictions and (2) that he speaks only Spanish. Based on Heath's representations of Rodriguez' abilities, all of the surveyed fast-food employers indicated that they would consider hiring Rodriguez. Heath, however, did not inform the surveyed restaurants that Rodriguez cannot read or write any language.

¶8        The ALJ found that Rodriguez did not meet the requirements of an "odd-lot worker." The carrier was therefore not required to produce evidence that available and suitable employment existed. She also found that fast-food employment was available and suitable for Rodriguez on at least a part-time basis. She awarded Rodriguez a partial LEC. Rodriguez timely sought review by this court.

## DISCUSSION

¶9        In reviewing findings and awards of the ICA, this court defers to the ALJ's factual findings but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270 ¶ 14 (App. 2003). The injured employee bears the burden of establishing each element of a claim. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). To show a loss of earning capacity, an injured worker must show an "inability to perform the job at which he was injured and to get other work which he can perform in light of his physical impairments." *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983). Generally, a worker may meet this burden by showing that the industrial injuries prevent a return to the prior employment and that the worker has made a reasonable effort to find work in the area of residence. *Id.* Factors to consider when determining LEC include work history, work restrictions and age at the time of injury. *See* Ariz. Rev. Stat. (A.R.S.) § 23-1044(D) (2020). The worker's "residual earning capacity can only be established by evidence of job opportunities that are both (1) suitable, i.e. of the type the claimant could reasonably be expected to perform in light of his impaired physical or mental condition, and (2) reasonably available." *Zimmerman*, 137 Ariz. at 582.

¶10        An "odd lot" worker is one whose injury is such that she or "he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does

not exist." *Id*. at 581 (citation omitted).[3] If a claimant fits this category, the burden of proof shifts to the carrier:

> If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant prima facie in the odd-lot category, the burden should be on the employer to show some kind of work is *regularly* and *continuously* available to the claimant.

*Id*. at 582 (citation omitted).

**¶11**        The "odd lot" approach adopted in *Zimmerman* is not decided by looking only at the claimant's injury. Instead, the injury, "*coupled with other factors*," can place a worker in the odd lot category. *Id*. (emphasis added). Rodriguez' work restrictions, lack of education, inability to read and write, age and work history put him in a unique position with minimal employment prospects, as Prestwood testified. Because he fits within the odd lot category, unless the carrier shows that suitable employment is available for Rodriguez, he may be classified as totally disabled. *Employers Mut. Liab. Ins. Co. v. Indus. Comm'n*, 25 Ariz. App. 117, 120 (1975).[4]

**¶12**        Relying on Heath's testimony, the ALJ found that employment as a fast-food worker was suitable for Rodriguez. The record, however, does not support that finding. The record contains no testimony or other evidence that, when Heath surveyed fast-food employers, he described a potential worker who could not read or write in any language. Neither does the record contain job descriptions furnished by those employers from which it could be determined that such work was suitable for Rodriguez. Further still, Heath did not specifically testify about whether a lack of ability to read and write would impede obtaining a position as a

---

[3] The phrase "odd lot" is attributed to a 1911 British opinion where an injured worker's capacity to work was described as being in the position of "an 'odd lot' in the labour market." *Zimmerman*, 137 Ariz. at 581 n.1 (citation omitted).

[4] Even if Rodriguez were not in the "odd lot" category, his testimony about his efforts to find employment, which this court must treat as credible on the record presented, *Villanueva,* 148 Ariz. at 289, supports a finding that he was unable to get other work. Thus, the burden shifted regardless of the "odd lot" conclusion.

fast-food worker. Although Heath testified that a fast-food worker learns by demonstration, he did not explain how, if Rodriguez were to be hired as a fast-food worker, he could know what orders to prepare.

**¶13** The carrier argues that Heath knew Rodriguez cannot read and write and would have undoubtedly relayed those limitations to the surveyed employers. The record, however, does not show that occurred and the court cannot assume that it did. Such unusual but material factors must be explicitly communicated to the surveyed potential employers before the results of such a survey can be given any weight. As noted in *Zimmerman*, "abstractions are not sufficient." 137 Ariz. at 582 (citation omitted).

## CONCLUSION

**¶14** Rodriguez qualifies as an "odd lot" worker, therefore the carrier bears the burden of proving that suitable jobs are available to him. The ALJ's finding that fast-food employment was suitable was unsupported because Rodriquez's inability to read and write was not adequately considered in that determination. Accordingly, the award is set aside.



AMY M. WOOD • Clerk of the Court
FILED:   AA